Michael **CHRISTENSEN,**
et al., Plaintiffs,

v.

The **UNITED STATES,** Defendant.

No. 00–355C.

United States Court of Federal Claims.

March 23, 2004.

William A. Aileo, Springville, PA, argued for plaintiffs. With him on the briefs was Barry P. Steinberg, Washington, D.C.

J. Reid Prouty, Trial Attorney, Commercial Litigation Branch, Department of Justice, Washington, D.C., argued for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Deputy Director, Commercial Litigation Branch. Of counsel was Major Ira Perkins, United States Air Force, Military Personnel Branch, Arlington, VA.

### OPINION AND ORDER

LETTOW, Judge.

The plaintiffs in this class action were colonels in the Air Force who were selected for involuntary retirement in 1994. They raise claims for monetary damages based on the Military Pay Act, 37 U.S.C. § 204, and they also seek reinstatement. The certified opt-in class consists of all officers who were selected for involuntary retirement by the Fiscal Year 1994B Colonel Selective Early Retirement Board ("Retirement Board" or "Board"). See Christensen v. United States, 49 Fed.Cl. 165, 167–68 (2001) (granting plaintiffs' motion to certify).[1] Their claims are predicated upon the alleged use by the Retirement Board of an unconstitutional racial and gender preference in evaluating officers for retention or early retirement. The government has conceded liability, as discussed below, and the issues before the Court concern remedy. Plaintiffs have moved for summary judgment on remedies, and the government has filed a cross-motion seeking a remand to the Air Force for a determination whether monetary relief should be denied to any officers in the class. For the reasons set out below, the Court denies plaintiffs' motion and grants the government's motion in part and denies it in part, remanding the case to the Air Force pursuant to 28 U.S.C. § 1491(a)(2) with explicit directions for the conduct of administrative proceedings.

### BACKGROUND

In January 1994, the Air Force convened a Retirement Board pursuant to 10 U.S.C. §§ 638 and 638a, to evaluate Air Force colonels in the 1967 and 1969 year groups plus certain chaplain colonels and to select those who were to be involuntarily retired as part of a general reduction in military forces. Def.'s Mot. to Dismiss, Ex. 1 at 1 (Standard Memorandum of Instructions for Selective Early Retirement Boards (undated)).[2] The

---

1. The class consists of 104 persons. See infra, at 29 n. 14.

2. This Board and other boards were acting to reduce the size of the military services. The Standard Memorandum of Instructions for each of these boards specified that

[t]he maximum quota [for selective early retirement] will not exceed 30 percent of the number of officers considered in each grade and competitive category. The actual quotas [will be] based upon the number of retirements, over and above other known or expected losses, that must occur if strength and/or DOPMA [Defense Officer Personnel Management Act, Pub.L. No. 96–513, 94 Stat. 2835 (Dec. 12, 1980)] grade limitations are to be met.

Def.'s Mot. to Dismiss, Ex. 1 at 1. This instruction followed the statutory mandate that "[t]he Secretary concerned shall specify the total num-

instructions under which the Board acted included a preference for minority and women officers:

> Your evaluation of minority and women officers must clearly afford them fair and equitable consideration. Equal opportunity for all officers is an essential element of our selection system. In your evaluation of the records of minority and women officers, you should be particularly sensitive to the possibility that past individual and societal attitudes, and in some instances utilization policies or practices, may have placed these officers at a disadvantage from a total career perspective. The board shall prepare for review by the Secretary and Chief of Staff, a report of minority and women officer selections as compared to the selection rates for all officers considered by the board.

*Id.*, Ex. 1 at 3. Out of a total of 933 colonels considered among these three categories, 198 were selected for involuntary retirement. *Id.*, Ex. 2 (Staff Summary Sheet (Feb. 25, 1994)).[3] The government avers that of the officers retained, 28 were minorities and women. Def.'s Proposed Finding of Undisputed Facts, Attach. ¶ 4 (Declaration of Howard G. Clayton (Nov. 14, 2003)).

On June 22, 2000, Michael Christensen and three other colonels filed this case as a class action on behalf of all 198 officers who were selected for involuntary retirement. They concurrently moved for certification of the opt-in class. On April 9, 2001, Senior Judge Tidwell of this Court found that certification of the class was appropriate and entered an order certifying the class, providing for notice to class members and receipt of responses, and appointing class counsel. *Christensen*, 49 Fed.Cl. at 167–68. The government did not then file an answer to the complaint,[4] and, indeed, it still has not done so.

Upon conclusion of the opt-in period, the class moved for limited discovery of documents pertaining to the Retirement Board's selection process. Motion for Leave to Conduct Limited Discovery (Feb. 19, 2002). While this request was pending, the Federal Circuit issued its decision in *Berkley v. United States*, 287 F.3d 1076 (Fed.Cir.2002), holding that a substantively identical instruction for a different group of officers was subject to strict scrutiny.[5] At a status conference held before Chief Judge Damich of this Court on June 24, 2002, the parties reported that, in light of *Berkley*, they were engaged in pursuing settlement discussions. Thereafter, in a Joint Status Report, the parties indicated that although settlement was not reasonably likely, the government conceded liability:

> Because the Court of Appeals has determined that the instruction [respecting minorities and women], on its face, creates a preference, *the Government declines to proceed further in defending this case upon its merits.*
>
> ... [T]his decision by the Government moots plaintiffs' discovery motion now be-

ber of officers to be recommended for discharge by a selection board convened pursuant to [10 U.S.C. § 638a] subsection (b)(4). That number may not be more than 30 percent of the number of officers considered." 10 U.S.C. § 638a(d)(2).

3. Of 24 chaplains considered, seven were selected for early retirement. Def.'s Mot. to Dismiss, Ex. 2. Of 909 other Air Force colonels considered, 191 were selected for retirement. *Id.*

4. On February 8, 2001, the government filed a motion to dismiss and for summary judgment, and on March 3, 2001, the colonels filed a cross-motion for summary judgment. Those motions were denied as premature in connection with the Court's certification decision. *Christensen*, 49 Fed.Cl. at 168.

5. In *Berkley*, the Court of Appeals stated that "[f]or purposes of this discussion, we refer primarily to standards applicable to racial classifications," while noting that gender classifications are evaluated under a different standard. *Berkley*, 287 F.3d at 1082 n. 1.

Where a heightened-scrutiny standard is applicable, the burden of proof shifts from the plaintiff to the defendant. *Gratz v. Bollinger*, 539 U.S. 244, 123 S.Ct. 2411, 2427, 156 L.Ed.2d 257 (2003). Where a racial classification by the government is at issue, to avoid liability the government must prove that the challenged action served a compelling governmental interest and that the challenged action was narrowly tailored to further that interest. *Id.* at 2427. A case involving a gender classification by the government requires the government to prove that the challenged action served an important governmental objective and that the challenged action was substantially related to that objective. *United States v. Virginia*, 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996).

fore the Court, *removes the remaining basis for the Government's opposition to entry of judgment as to liability for the plaintiffs*, and leaves the determination of the appropriate remedy as the only remaining issue to be resolved by the Court. Joint Status Report at 1 (July 26, 2002) (emphasis added). The Court consequently granted plaintiffs summary judgment on liability and stayed further proceedings to await a decision by the Federal Circuit in an appeal from *Christian v. United States*, 49 Fed.Cl. 720 (2001) (*"Christian I"*), in which a similar issue respecting remedy had been decided. The court in *Christian I* had applied the constructive-service doctrine to remediate use of a discriminatory-preference instruction by an Army retirement board, rejecting the government's request for a remand to the Army for reconsideration by a reconstituted board to determine whether "harmless error" would preclude a monetary award for some officers.[6]

Subsequently, in *Christian v. United States*, 337 F.3d 1338 (Fed.Cir.2003) (*"Christian II"*), the Court of Appeals decided that harmless-error analysis should be applied to determine which of the officers selected for involuntary retirement would have been selected regardless of the unconstitutional instruction. The Court of Appeals remanded the case to the trial court with instructions in turn to remand the case to the Secretary of the Army to determine the most appropriate procedure for conducting such analysis. *Id.* at 1349. Plaintiffs in the instant case participated in *Christian II* as *amici curiae* and argued that the government had waived any harmless-error contention. The Federal Circuit declined to consider this argument on the ground that none of the parties had made such a claim: "The amici contend that the government waived its harmless error claim by not asserting it sooner, and that the harmless error doctrine applies only to liabil-

ity questions but not to damages issues. Since none of the parties has made or adopted either argument, we decline to consider them." *Id.* at 1345.

With the decision in *Christian II*, the stay in this case was lifted, and the parties filed the motions pending before the Court regarding remedy. Plaintiffs have again put forward the arguments they made in *Christian II* as *amici*, but they do so now as a party in the context of their motion for summary judgment as to remedy. The government has responded with the same arguments it raised on appeal in *Christian II*, seeking a remand to the Secretary of the Air Force for application of the harmless-error doctrine. The parties have fully briefed their positions on these issues, and a hearing was conducted on January 21, 2004.

## STANDARD FOR DECISION

Summary judgment is appropriate if the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rules of the Court of Federal Claims ("RCFC") 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists if a rational finder of fact could reach only one reasonable conclusion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In making this determination, courts must resolve any doubt over a factual issue in favor of the nonmoving party. *Id.* at 587–88, 106 S.Ct. 1348.

## ANALYSIS

### A. The Nature of the "Harmless Error" Defense

#### 1. Military back pay cases.

■ Decisions by the military services regarding either retention or promotion can be

---

**6.** Under the "constructive service doctrine," military officers " 'who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation.... They are, therefore, entitled to back pay and benefits for the intervening period, *i.e.*, retroactive to their original separation from service.' " *Anderson v. United States*, 59 Fed.Cl. 451, 457–58 (2004) (quoting *Christian v. United States*, 337 F.3d 1338, 1347 (Fed.Cir.2003)).

The "harmless error" doctrine can be invoked after a claimant has proven a *prima facie* case of illegality or error in a personnel action by a military service. At that juncture, the service may choose to take on the affirmative obligation to show that there was no substantial nexus or connection between the proven error and the contested action and thus that no damages are due. *See infra*, at 23.

the subject of back-pay claims in this Court. *See Christian II*, 337 F.3d 1338 (board selection for early retirement); *Porter v. United States*, 163 F.3d 1304 (Fed.Cir.1998) (mandated separation after officer had been twice passed over for promotion). Such cases are analyzed under a two-part evidentiary scheme whereby the claimant must make an initial showing of illegal or improper action by a military service and the government must then prove harmlessness if it is to avoid paying damages in the form of back pay or benefits. *See, e.g., Engels v. United States*, 230 Ct.Cl. 465, 678 F.2d 173, 175 (1982).[7]

*Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979), is the seminal military back pay case analyzing the nature of the harmless-error defense. In that case, the Court of Claims, sitting *en banc*, explained that a plaintiff bears the burden of showing an "abuse of administrative discretion [that] rises to the level of legal error which merits judicial relief." 594 F.2d at 813. Once a claimant satisfies that initial burden, the *Sanders* court addressed the consequent steps first by rejecting the government's argument that the plaintiff should also be required to show "a conclusive causal connection" between the error and plaintiff's discharge. *Id.* at 814. The court instead placed the burden of proof for the second step on the government, concluding that "the ultimate burden should be on the party whose error and obfuscation of the evidence caused the problem in the first place." *Id.* at 816.

*Sanders* concerned an officer who had been separated after having been twice passed over for promotion. The officer's claim centered on four officer effectiveness reports ("OERs") that were allegedly material to his promotability. Correction boards

had voided the OERs but had not set aside the passovers. The court had remanded the case to the correction board, " 'instructing it to make findings of fact showing the basis of its conclusions.' " *Id.* at 809 (quoting *Sanders v. United States*, 207 Ct.Cl. 962, 521 F.2d 1406 (1975)). The correction board responded that the earlier action by a board in refusing to set aside the passovers was merely an " 'administrative oversight' that would not have made for a different result had the mistake not been made." *Sanders*, 594 F.2d at 809. In these circumstances, the court observed that judicial review was difficult, both because of the response to the remand and because "[s]election board proceedings are secret and the records of these proceedings are routinely and promptly destroyed soon after the boards have completed their selections." *Id.* at 815. The court reasoned that it would be impossible for the plaintiff to prove he would have been promoted "but for" the errors in his record. *Id.* at 816. The court in *Sanders* thus put the ultimate burden on the government and opined that the government could satisfy its burden "when the error or injustice was truly harmless, that is, when substantial evidence shows that it was unlikely that the officer would have been promoted in any event." *Id.* at 818.[8]

The following year, the Court of Claims further elaborated on the plaintiff's burden as contrasted to that of the government:

> To recover back pay, it is not enough for the plaintiff to show merely that an error or injustice was committed in the administrative process; he must go further and either make a showing that the defect substantially affected the decision to separate him or relieve him from active duty, or at least he must set forth enough material to

---

7. For some proven claims of illegality or impropriety on the part of the military service, the Federal Circuit has refused to allow the government to put forward a harmless-error defense. Such claims include an error relating to the composition of a selection board. *See Porter*, 163 F.3d at 1319 (citing *Evensen v. United States*, 228 Ct.Cl. 207, 654 F.2d 68 (1981); *Doyle v. United States*, 220 Ct.Cl. 285, 599 F.2d 984 (1979)). *See also Christian II*, 337 F.3d at 1345–46 (distinguishing *Doyle* on factual grounds).

8. In *Sanders* the court was unanimous as to the result, but two concurring judges would have imposed a heavier burden on the government in such a case. In the view of these concurring judges, "[t]here might be some cases of obvious harmless error, if the officer's record was hopeless, apart from the void OERs." 594 F.2d at 821–22 (Nichols, J., concurring, with whom Smith, J., joined). A third concurring judge separately expressed concern about the lack of explanation for the board's action respecting the OERs. *Id.* at 821 (Friedman, J., concurring).

impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action. *Hary v. United States*, 223 Ct.Cl. 10, 618 F.2d 704, 707 (1980). Further elaborating the government's burden, the Court of Claims in 1982 looked to authorities including *Sanders* to conclude that "the end-burden of persuasion falls to the Government to show harmlessness-that, despite the plaintiff's prima facie case, there was no substantial nexus or connection." *Engels*, 678 F.2d at 175. Referring to *Sanders*, the court again emphasized that the law "place[s] on the defendant the ultimate risk that the court remains unconvinced that the proven error can be deemed harmless, insubstantial in effect, or unimportant." *Id.* at 175–76.

After *Sanders*, the harmless-error doctrine has been continuously applied where raised by the government in defense of claims by military retirees in this Court, as the Federal Circuit's decision in *Christian II* demonstrates. *See Christian II*, 337 F.3d at 1347–48. A statutory change which occurred in 2001 affects future cases. At the end of 2001, Congress enacted 10 U.S.C. § 1558, which allows the military service to refer correction of an erroneous decision to retire an officer to a special board. *See* Pub.L. 107–107, Div. A, Title V, § 503(a)(1), 115 Stat. 1080 (2001).[9] However, the new Act does not pertain "to any action commenced in a court of the United States before the date of enactment of this Act [December 28, 2001]." *Id.*, § 503(c), 115 Stat. at 1084. As noted earlier, the complaint in this action was filed on June 22, 2000. This case thus is not governed by the 2001 statute but rather by the harmless-error doctrine stemming from *Sanders*. *See Christian II*, 337 F.3d at 1348 (same result).

### 2. Analogy to "same decision" doctrine.

An approach analytically similar to the harmless-error doctrine in military pay cases has been applied by the United States Su-

preme Court to several types of constitutional claims in civilian contexts. The "same decision" defense was elucidated in *Mt. Healthy City School Dist. Board of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), where the Court analyzed a claim involving free speech rights protected by the First and Fourteenth Amendments under a similar two-part evidentiary scheme:

> Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"-or to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the *same decision* as to respondent's reemployment even in the absence of the protected conduct.

*Id.* at 576 (Emphasis added; footnote omitted).

Notably, judges have recognized that difficulties might arise in applying the same-decision defense where contemporaneous records were not available, because development of a factual record in such circumstances might amount to a "fictitious recasting of past conduct." *Regents of the Univ. of California v. Bakke*, 438 U.S. 265, 320 n. 54, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (Powell, J. concurring). Justice Powell opined that "[t]here is no occasion for remanding the case to permit petitioner to reconstruct what might have happened if it had been operating the type of program described as legitimate." *Id.* (citing *Mt. Healthy*, 429 U.S. at 284–87, 97 S.Ct. 568). In his view, "[h]aving injured respondent solely on the basis of an unlawful classification, petitioner cannot now hypothesize that it might have employed lawful means of achieving the same result." *Id.* (citing *Arlington Heights v. Metropolitan*

---

9. This law applied to retirement boards a procedure comparable to that previously put in place to provide corrective action for an erroneous promotion decision. In 1980, 10 U.S.C. § 628 was enacted calling for special selection boards to be convened to consider for promotion officers

whose records had been corrected. *See Porter*, 163 F.3d at 1323. The judicially created harmless-error test was supplanted by this statutory administrative avenue of relief for promotion errors. *Id.* at 1324.

*Hous. Dev. Corp.,* 429 U.S. 252, 265–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)).

Nonetheless, satisfactory proof substantiating a same-decision defense may be available in a particular case. In *Texas v. Lesage,* 528 U.S. 18, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999), the Supreme Court in a unanimous per curiam decision applied the same-decision analysis to a claim arising under the Equal Protection Clause of the Fourteenth Amendment and federal civil rights statutes. The Court gleaned from *Mt. Healthy* that a state university satisfied its burden where it "conclusively established" that it would have reached the same decision regardless of its violation:

> Insofar as the Court of Appeals held that summary judgment was inappropriate on Lesage's § 1983 action seeking damages for the school's rejection of his application for the 1996–1997 academic year even if petitioners conclusively established that Lesage would have been rejected under a race-neutral policy, its decision is inconsistent with the Court's well-established framework for analyzing such claims. Under *Mt. Healthy* . . ., even if the government has considered an impermissible criterion in making a decision adverse to the plaintiff, it can nonetheless defeat liability by demonstrating that it would have made the same decision absent the forbidden consideration. Our previous decisions on this point have typically involved alleged retaliation for protected First Amendment activity rather than racial discrimination, but that distinction is immaterial. The underlying principle is the same: The government can avoid liability by proving that it would have made the same decision without the impermissible motive.

> Simply put, where a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless,

there is no cognizable injury warranting relief under § 1983.

> . . . [W]here there is no allegation of an ongoing or imminent constitutional violation to support a claim for forward-looking relief, the government's conclusive demonstration that it would have made the same decision absent the alleged discrimination precludes any finding of liability.

*Id.* at 20–21, 120 S.Ct. 467 (internal citations omitted).[10]

Also instructive are the Supreme Court's decisions in so-called "mixed motive" cases of alleged discrimination in employment. In *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), a plurality opinion by Justice Brennan relied on the text and legislative history of Section 706 of Title VII of the Civil Rights Act of 1964, 78 Stat. 259, as amended, 42 U.S.C. § 2000e–5, along with other provisions of that Act, in "hold[ing] that when a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." 490 U.S. at 258, 109 S.Ct. 1775. The plurality rejected putting the burden of proof on the plaintiff regarding defendant's decision-making, and, conversely, it also abjured requiring the defendant to prove the same-decision defense by a clear and convincing showing. In its application of the same-decision doctrine, the plurality found confirmatory support in prior Title VII case law, *Mt. Healthy* and its progeny, and decisions interpreting the National Labor Relations Act. *Id.* at 248–250, 109 S.Ct. 1775. A concurring opinion by Justice O'Connor agreed both that "the burden of persuasion should shift to the [defendant]" regarding the same-decision defense and that "this burden shift is properly part of the liability phase of the litigation." *Id.* at 260, 109 S.Ct. 1775 (O'Connor, J. concurring). Justice O'Connor focused on the liability

---

**10.** In *Lesage,* the government's "conclusive demonstration" consisted of " 'uncontested evidence that the students ultimately admitted to the program ha[d] credentials that the committee considered superior to Plaintiff's.' " 528 U.S. at 20, 120 S.Ct. 467 (quoting the district court's findings). That evidence included higher grade point averages and higher scores on the Graduate Record Examination by other applicants, as well as stronger references. *Id.* at 19, 120 S.Ct. 467.

showing required by plaintiff, not defendant. In her view, a plaintiff had to "show by direct evidence that an illegitimate criterion was a substantial factor in the decision." *Id.* at 276, 109 S.Ct. 1775.

Two years after *Price Waterhouse*, Congress amended the Civil Rights Act to provide, among other things, that the same-decision doctrine does not constitute a complete defense to liability but does limit available remedies to declaratory relief, certain kinds of injunctive relief, and attorney's fees and costs. 42 U.S.C. § 2000e–5(g)(2)(B). *See* Civil Rights Act of 1991, Pub.L. 102–166, Title I, §§ 107(b), 112, 113(b), 105 Stat. 1075, 1078–79 (Nov. 21, 1999). Congress also provided a statutory definition of the evidentiary requirements for a plaintiff in a mixed-motive case. See 42 U.S.C. §§ 2000e(m), 2000e–2(m). In *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), the Supreme Court held that the evidentiary provisions of the 1991 Act had supplanted Justice O'Connor's concurrence in *Price Waterhouse* and that a plaintiff was not required to adduce direct evidence to establish liability. Rather, Congress in the 1991 Act had left "little doubt that no special evidentiary showing is required" on the part of a plaintiff. *Id.,* 123 S.Ct. at 2154. The evidentiary burden on defendant was unchanged.

### B. Waiver of Defense

■ The class argues that the harmless-error defense is an affirmative defense to liability and that the government in this case waived it by "consciously decid[ing] not to pursue the *Mt. Healthy* defense in the course of the liability phase." Pls.' Mot. at 7.[11] As the preceding discussion indicates, there is strong legal support for this argument; a harmless-error contention has been deemed an affirmative defense to liability for dam-

ages. *See, e.g., Sanders,* 594 F.2d at 816 ("the ultimate burden should be on the party whose error and obfuscation of the evidence caused the problem"); *Engels,* 678 F.2d at 175 ("the end-burden of persuasion falls to the government to show harmlessness"); *cf. Price Waterhouse,* 490 U.S. at 246, 109 S.Ct. 1775 ("[T]he employer's burden is most appropriately deemed an affirmative defense: the plaintiff must persuade the fact finder on one point, and then the employer, if it wishes to prevail, must persuade it on another."); *Lesage,* 528 U.S. at 20–21, 120 S.Ct. 467 ("even if the government has considered an impermissible criterion in making a decision adverse to the plaintiff, it can nonetheless *defeat liability* by demonstrating that it would have made the same decision absent the forbidden consideration" (emphasis added)).[12]

The issue of waiver in this case poses a close question. There is no doubt that during the initial stages of this case, the government signaled its intention to invoke the harmless-error defense if the officers showed a *prima facie* case of liability. In its opposition to the officers' motion for class certification, the government commented that it would assert "the harmless error doctrine":

> If the Court were to hold that the [Memorandum of Instructions] failed judicial scrutiny in any of the instances set forth above, the United States would then have available a number of defenses, including the doctrine of harmless error.
>
> ... Whether the doctrine of harmless error applies in the context of this case is an open question.... In *Berkley,* however, this Court noted that, even if the [Memorandum of Instruction] at issue were to be held unconstitutional, the Court still would have to determine "whether or not individ-

---

11. In this instance, because the class showed that a racial as well as a gender classification was at issue, and thus that strict scrutiny was applicable, the government would have had to bear the burden of proving that the Retirement Board instructions served a compelling governmental interest and that the challenged action was narrowly tailored to that interest. *See Gratz,* 123 S.Ct. at 2427. The government's concessions obviated the need to make findings on these issues.

12. Commentators have argued that the Supreme Court erred in setting up the same-decision test as a defense to liability rather than to damages. *See, e.g.,* Sheldon Nahmod, *Mt. Healthy and Causation–In–Fact: The Court Still Doesn't Get It!,* 51 Mercer L.Rev. 603 (2000). However, the burden-shift portion of the *Mt. Healthy* line of cases is now well-established as an aspect of a liability determination as *Price Waterhouse* and *Lesage* show.

ual plaintiffs are entitled to per se application of that finding to their individual case histories." *Berkley,* 45 Fed.Cl. at 235. Furthermore, in *Christian v. United States,* No. 97–165C (J., Smith), this Court has ordered briefing and oral argument to address, among other things, whether the harmless error doctrine applies to constitutional errors made in the military pay context. We submit that the harmless error doctrine does apply, and that, were the Court to find a constitutional error, it would then have to make an individual determination concerning the effect of that error upon each plaintiff.

Def.'s Opp'n to Pls.' Mot. to Certify (Jan. 31, 2001) at 6–7. However, because the government never has had to file an answer in this case, it has not had to spell out definitively its affirmative defenses. *See* RCFC 12(b).

Against this background must be weighed the government's broad concession of liability, which included the statement that "the Government declines to proceed further in defending this case upon its merits." Joint Status Report at 1 (July 26, 2002) (quoted more fully *supra,* at 21–22). Moreover, this statement abjuring defenses was not an isolated oral comment made in the context of addressing other issues. The statement was made to the Court in a writing that the government must have known would have had binding consequences for the case. In that vein, the Court relied on the statement and associated representations to enter summary judgment for the class and against the government on liability. *See supra,* at 22.

On the other hand, as the class itself recognizes, "[w]hen and how to present an affirmative defense is subject to precise rules[;] when to adjudicate an asserted affirmative defense is subject to reasonable judicial discretion." Pls.' Opp'n at 4–5. In its broad concession of liability, the government did not specifically abjure reliance on the harmless-error doctrine. *Compare Mudge v. United States,* 59 Fed.Cl. 527, 535–36 (2004) (rejecting waiver based upon a general statement), and *Curtis v. United States,* 59 Fed. Cl. 543, 549 (2004) (same), *with Anderson v. United States,* 59 Fed.Cl. 451, 458–59 (2004) (finding waiver through an explicit written

submission). In these circumstances, the Court cannot conclude that the government affirmatively and explicitly waived the harmless-error defense it had identified during the early stages of this case.

### C. Remand

■ Because harmless-error analysis should be applied in this case, the question arises whether this Court should undertake that analysis or whether a remand to the Secretary of the Air Force is necessary. *Sanders* implicitly addressed that question by explicating the harmless-error test only after a remand to the Air Force had been carried out. *See Sanders,* 594 F.2d at 809. Procedurally, the Tucker Act authorizes this Court to order a remand by providing, in relevant part, that "[i]n any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2). The officers contend that a remand is inappropriate because the Air Force's instruction to the Retirement Board has been conceded to be constitutionally infirm and on remand the Air Force would merely engage in a "'fictitious recasting of past conduct.'" Pls.' Mot. at 10 (quoting *Bakke,* 438 U.S. at 320, 98 S.Ct. 2733 (Powell, J., concurring)). They also cite the decision in *Saunders v. White,* 191 F.Supp.2d 95 (D.D.C.2002) (Lamberth, J.), in which a military officer also challenged the use of affirmative-action instructions by military boards. Pls.' Mot. at 11. The court in *Saunders* rejected the government's argument that a special selection board should be convened to reevaluate the military's action. 191 F.Supp.2d at 116. The government counters that the constitutional nature of the infirmity in this case does not alter the appropriateness of a remand. Def.'s Mot. for Remand at 11–12 (citing *Christian II*). Moreover, the government asserts that it is immaterial that the original Retirement Board's records were destroyed as a matter of policy, *see infra,* at 29, and that a reconstruction of these records might be impossible. Def.'s Mot. for Remand at 10–11. The class contends that upon any remand the Air Force merely "proposes to take its best shot at an approximation." Pls.' Mot. at 11.

To state the obvious, this Court has no role in running the Air Force or any other military service. As the Supreme Court stated in *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953),

> [j]udges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*See also Adkins v. United States*, 68 F.3d 1317, 1322–23 (Fed.Cir.1995) (collecting cases); *Sanders*, 594 F.2d at 813 ("Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters."); *Barnes v. United States*, 57 Fed.Cl. 204, 208–09 (2003) (referring to " 'the court's incurable lack of knowledge of the total grist which the boards sift, [and] also … a preference not to meddle with the internal workings of the military' " (quoting *Richey v. United States*, 322 F.3d 1317, 1327 (Fed.Cir.2003))).

If a *de novo* evaluation of records of individual officers were not required, this Court might be able to issue a judgment providing relief to plaintiffs without reference to a remand. However, any harmless-error analysis in this case necessarily would involve an evaluation of a large number of files, now over ten years old, of senior Air Force officers, as well as an assessment of the needs of the service ten years ago. As *Orloff, Richey,* and *Adkins* indicate, the Court is not in a position to perform such an analysis. Thus, a remand to the Air Force is necessary, as *Christian II* suggests. However, the directions for that remand are important, to avoid the problems that developed in *Sanders* and that were identified in Justice Powell's concurrence in *Bakke*.

### D. Directions for Remand

If this Court itself were the appropriate fact-finder in this case, it would be obliged to determine, with respect to each colonel, whether the government proved by a preponderance of the evidence that each such individual would have been selected for involuntary retirement regardless of the unconstitutional instruction to the Retirement Board. *See Price Waterhouse*, 490 U.S. at 258, 109 S.Ct. 1775 (preponderance standard applies to same-decision doctrine), 253 (the preponderance standard applies to civil litigation as a conventional rule, and exceptions are uncommon); *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568 (preponderance-of-the-evidence standard applies to same-decision analysis). As discussed, however, this Court cannot be the fact-finder in this case. That task must be undertaken on remand at the direction of the Secretary of the Air Force.

Accordingly, pursuant to 28 U.S.C. § 1491(a)(2), the Court remands this case to the Secretary of the Air Force to make findings of fact sufficient for this Court's subsequent review regarding each of those individual colonels in the class who, in the considered view of the Secretary or his designee, would definitely have been selected for involuntary retirement in 1994 regardless of the unconstitutional instruction to the Retirement Board. The Secretary's obligations on remand may not be delegated to a special selection board that would make a fresh analysis. Any such decision-making apparatus would "say[ ] nothing about what decision the original selection board would have made [absent the improper instruction]." *Saunders*, 191 F.Supp.2d at 116. Rather, the task on remand is to determine whether there is sufficient "evidence that demonstrates that the original board[ ] would have reached the same conclusion [respecting each individual officer in the class] using a race and gender neutral standard." *Id.* This effort is made somewhat problematic because as a matter of policy the Air Force destroyed the relevant selection files after the Retirement Board had completed its work. Hr'g Tr. at 25, 27. *See also Sanders*, 594 F.2d at 815; *Saunders*, 191 F.Supp.2d at 119. Nonetheless, the harmless-error analysis can be a valid method by which the Air Force can avoid liability in individual cases, and the Air Force has a

right to undertake the burden of satisfying its evidentiary requirements respecting that analysis.

The question arises as to the nature of the Air Force's evidentiary burden. In *Sanders*, the court suggested that the government must proffer "substantial evidence" showing that "the error or injustice was truly harmless." 594 F.2d at 818. Additionally, the *Lesage* gloss on *Mt. Healthy* suggested that the government could satisfy its burden by making a "conclusive demonstration." *Lesage*, 528 U.S. at 21, 120 S.Ct. 467. However, the Supreme Court in *Lesage* may have been merely commenting on the nature of the evidence in that particular case rather than indicating an evidentiary standard to be applied in the future. Manifestly, the commentary in *Lesage* and that in *Sanders* suggest the application of a relatively demanding evidentiary requirement, and, indeed, a demanding requirement may be appropriate where, as here, the erring governmental unit is itself the fact-finder regarding the defense. In that vein, the Federal Circuit's decision in *Porter* indicates that the *en banc* ruling in *Sanders* remains binding precedent and that the substantial-evidence test is applicable to and appropriate for this Court's review following a military service's consideration of a remand in these situations. *Compare Porter*, 163 F.3d at 1315–17 (harmless-error analysis), *with id.* at 1324–25 (procedure under new statutory scheme). *See also Lindsay v. United States*, 295 F.3d 1252, 1262 (Fed.Cir. 2002) ("This case might be more difficult if the [Air Force Board for Correction of Military Records] had found no nexus between any alleged defects in Lindsay's OER and his subsequent nonselections for promotion, although such determinations are still subject to review under the substantial evidence or arbitrary and capricious standards.") (citing

*Engels*, 678 F.2d at 177).[13]   Accordingly, in accord with *Sanders*, the Secretary of the Air Force is directed to establish a procedure for the remand that takes into account the fact that this Court's review subsequent to the remand will take place on a substantial-evidence basis.

Finally, in the ensuing fact-finding process, it is evident that the danger of *post hoc* rationalization is acute. On remand, the Secretary should take into account Justice Powell's admonition in his concurring opinion in *Bakke* against hypothetical reconstructions of events and circumstances where contemporaneous records are not available. *Bakke*, 438 U.S. at 320 n. 54, 98 S.Ct. 2733. In *Sanders*, the court observed that the military services' practice of conducting "evaluation[s] of ... officer[s] under the whole-man concept ... makes it difficult in most cases to ferret out independent reasons leading to nonselection." 594 F.2d at 816. In that respect, it is worthy of emphasis that the Secretary "bear[s] the risk that the influence of legal and illegal motives cannot be separated, because he knowingly created the risk and because the risk was created not by innocent activity but by his own wrongdoing." *Price Waterhouse*, 490 U.S. at 250, 109 S.Ct. 1775 (quoting *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 403, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983)). If the Secretary lacks sufficient evidence showing that a particular officer would have been selected for involuntary retirement had there not been the unconstitutional instruction, such officer is entitled to reinstatement and back pay.[14]

## CONCLUSION

For the reasons stated above, the plaintiffs' motion for summary judgment on remedies is DENIED. The government's motion for remand is GRANTED insofar as this case

---

**13.** Along these lines, there appears to be some question whether the substantial-evidence test would apply to this Court's review of the results of special boards convened under 10 U.S.C. §§ 628 and 1558. *Lindsay, Porter*, and *Sanders* would indicate that the more demanding test does so apply, rather than the arbitrary-and-capricious test. However, because this case does not involve action under those statutes, there is no need to resolve that question.

**14.** The individual members of the class are: Robert S. Andrews; Robert M. Atkinson; Howard S.

Baer; Richard K. Baki; Haynes M. Baumgardner, Jr.; Warren A. Bennett, Jr.; James R. Blackburn, Jr.; Lemuel M. Boyles; Ronald G. Bradley; Howard M. Brilliant; David K. Burke; John A. Caputo; Richard J. Cathy; Philip R. Celmer III; Michael Christensen; John R. Clark; Philip Clark; Hugh R. Conklin, Jr.; Bryan J. Cory; Edward L. Daniel; Paul B. Davis, Jr.; Anthony F. Deascenti; Edward R. Dietz; Paul W. Dilling; Anthony E. Duckworth; Roger E. Elstun; Philip J. Engstrom; David P. Fairclo; James G. Fromm; John A. Germann; Salvatore J. Giammo; Robert A. Gibson; Richard Glorioso; Nor-

is remanded for six months to the Secretary of the Air Force for further proceedings consistent with the specific directions set out in this opinion. It is DENIED insofar as the government sought a remand without directions. After proceedings on remand have been completed, the Secretary of the Air Force or an appropriate official or officer acting on his behalf shall file with this Court findings of fact with respect to each class member respecting whom monetary relief is proposed to be denied based on the harmless-error test.

IT IS SO ORDERED.

man H. Grinnell; Robert H. Haden; Robert M. Hail; William F. Hall; Joseph C. Hannigan; Barry N. Hansen; William R. Harris; Victoria Hill; George W. Hout; Thomas R. Hughes; James P. Jones; Rodney P. Jones; Sidney A. Kinser; Carl F. Knabe; Robert P. Kreps; Steven K. Ladd; Richard D. Larkins; Melvin F. Lee; John A. Lohse; Luke L. Lucas; Charles W. Marsh; William P. McCall; William McCrary; Kenton D. McHenry II; William E. McKeever; Robert L. Meinert; Jon A. Miller; Richard P. Moore; William P. Morton, Jr.; Paul E. Murr; George T. Naddra; Billy B. Napier; Kenneth R. Neher; Ronald E. Nelson; John R. Niederhauser; Clyde B. Phillips III; Charles W. Pitts; Clyde F. Pressley, Jr.; James W. Prouty; John C. Quandt; John P. Randle; Gerard L. Rifenburg; David M. Rigsbee; Bradford L. Riza; Jimmy A. Roquemore; Ronald L. Rusing; Ramon Sandoval, Jr.; William E. Savage; George J. Sawaya; Michael R. Seale; Ronald K. Shamblin; Larry Sipos; Carl D. Skakal, Jr.; Fred E. Spivey; William K. Stillwell; David E. Storey; Evan P. Stover III; Ozro S. Swett, Jr.; Frank R. Tague; Roy E. Thomas; Robert F. Unger; John M. Volpe; Scott L. Wangen; Ronald H. Wassom; Jerry P. Wax; Earl Westercom; James F. Whiting; Ronald T. Wilbanks; Gary H. Witherspoon; George K. Wright; Jonathan E. Zall. *See* Compl.; Final Notice of Additional Plaintiffs.

