Michael CHRISTENSEN, et al., Plaintiffs,

v.

**The UNITED STATES, Defendant.**

**No. 00–355C.**

United States Court of Federal Claims.

May 18, 2005.

Barry P. Steinberg, Washington, DC, for plaintiffs. With him at the hearing and on the brief was William A. Aileo, Springville, PA.

J. Reid Prouty, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Deputy Director, Commercial Litigation Branch. At the hearing as well as on the brief was Major John Carr, General Litigation Division, Air Force Legal Services Agency.

## OPINION AND ORDER

LETTOW, JUDGE.

This class action is before the court on the parties' motion for approval of their proposed settlement pursuant to Rule 23(e) of the Rules of the Court of Federal Claims ("RCFC"). The 104 members of the certified, opt-in class were colonels in the Air Force who had been selected for involuntary retirement by the Fiscal Year 1994B Colonel Selective Early Retirement Board ("Retirement Board" or "Board"). They alleged that the Retirement Board's selections were tainted by an unconstitutional racial and gender preference, and they sought as damages

monetary compensation based on the Military Pay Act, 37 U.S.C. § 204, as well as reinstatement. The government conceded the issue of liability, and the plaintiffs moved for summary judgment on damages while the government sought a remand to the Air Force to determine whether monetary relief should be denied to officers in the class. In disposing of those motions, this court issued an opinion and order remanding the case for six months to the Secretary of the Air Force to make findings of fact with respect to each of the 104 plaintiffs in accordance with the specific directions set out in that opinion. *Christensen v. United States*, 60 Fed.Cl. 19 (2004) (denying plaintiffs' motion for summary judgment on damages and granting in part and denying in part defendant's cross-motion). Within that time period, the parties reached a settlement agreement and filed with the court a joint motion and supporting briefs seeking, among other things, preliminary approval of the agreement. In an order dated October 28, 2004, the court preliminarily approved the proposed settlement agreement, approved the parties' proposed notice of that agreement to each class member, authorized supplemental briefing in support of final approval, and scheduled a hearing on the fairness of the agreement. Such a hearing was held on February 7, 2005. For the reasons set forth below, the court approves the parties' proposed settlement agreement.

## BACKGROUND

In January 1994, the Air Force convened the Retirement Board to select individual colonels to be involuntarily retired from a group comprised of the colonels in the 1967- and 1969-year groups and of certain chaplain colonels.[1] The instructions given to the Board in this regard called for special, preferential treatment of minority and female officers:

> Your evaluation of minority and women officers must clearly afford them fair and equitable consideration. Equal opportunity for all officers is an essential element of our selection system. In your evaluation

---

1. The Air Force acted pursuant to 10 U.S.C. §§ 638 and 638a, which mandated a general reduction of military forces.

of the records of minority and women officers, you should be particularly sensitive to the possibility that past individual and societal attitudes, and in some instances utilization policies or practices, may have placed these officers at a disadvantage from a total career perspective. The board shall prepare for review by the Secretary and Chief of Staff, a report of minority and women officer selections as compared to the selection rates for all officers considered by the board.

*Christensen,* 60 Fed.Cl. at 21. Out of a total of 933 colonels who were evaluated, the Board selected 198 for early retirement. *Id.* The government avers that of the retained officers, 28 were racial minorities or females. *Id.*

On June 22, 2000, Michael Christensen and three other colonels who were involuntarily retired by the Board filed a class action in this court on behalf of all 198 officers selected for early retirement. *Id.* The plaintiffs concurrently moved for certification of the opt-in class, which motion the court granted. *Christensen v. United States,* 49 Fed.Cl. 165, 167–68 (2001). Upon conclusion of the opt-in process, the class moved for limited discovery of documents relevant to the Retirement Board's selection decisions. *Christensen,* 60 Fed.Cl. at 21. While that motion was pending, the Federal Circuit issued its decision in *Berkley v. United States,* 287 F.3d 1076 (Fed. Cir.2002), ruling that heightened-scrutiny standards applied to a substantively identical instruction used in evaluating another group of officers.[2]

In light of *Berkley,* the parties represented to the court at a status conference that they were engaged in settlement discussions. *Christensen,* 60 Fed.Cl. at 21. Thereafter, the parties advised that although settlement did not appear to be reasonably likely, the government had conceded liability. *Id.* Accordingly, the court granted plaintiffs summary judgment on liability and stayed further proceedings pending a decision in the appeal from *Christian v. United States,* 49 Fed.Cl. 720 (2001), which involved similar factual and remedial issues. Thereafter, in the *Christian* case the court of appeals decided that "harmless error" analysis should be applied to determine which of the officers selected for involuntary retirement would have been selected regardless of the unconstitutional instruction. *Christian v. United States,* 337 F.3d 1338, 1349 (Fed.Cir.2003). The court of appeals remanded that case to the trial court, directing it to remand the case further to the Secretary of the Army for a determination of the most appropriate procedure for the application of such analysis. *Id.*

Subsequently, in this case the court analyzed the harmless-error defense in military back pay cases by looking to the seminal decision by the Court of Claims in *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979) (*en banc*), and subsequent cases applying *Sanders. Christensen,* 60 Fed.Cl. at 23–24. In particular, this court focused upon the two-step process explicated in *Sanders,* in which the plaintiff shouldered the initial burden of proof that an error merits judicial relief and the defendant bore the ultimate burden in connection with the second, concluding step that the error was actually harmless. *See id.* at 23. The court also drew an analogy to the similar "same decision" doctrine applied by the Supreme Court respecting several types of constitutional claims in civilian contexts. *See id.* at 24–26 (addressing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568,

2. In *Berkley,* the Federal Circuit explained that "[f]or purposes of this discussion, we refer primarily to standards applicable to racial classifications," while noting that gender classifications are subject to a different standard. *Berkley,* 287 F.3d at 1082 n. 1. In particular, where a heightened-scrutiny standard is applicable, the burden of proof shifts from the plaintiff to the defendant. *Gratz v. Bollinger,* 539 U.S. 244, 270, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003). Racial classifications employed by the government will pass constitutional muster only if the government proves that the challenged action served a compelling governmental interest and that the challenged action was narrowly tailored to further that interest. *Id.* at 270, 123 S.Ct. 2411. A case involving a gender classification by the government requires the government to prove that the challenged action served an important, "exceedingly persuasive" governmental objective and that the challenged action was substantially related to that objective. *United States v. Virginia,* 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996).

50 L.Ed.2d 471 (1977); *Regents of the Univ. of Cal. v. Bakke,* 438 U.S. 265, 320 n. 54, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (Powell, J., concurring); and *Texas v. Lesage,* 528 U.S. 18, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999)). Based upon that analysis, the court instructed the Secretary to determine whether sufficient evidence exists to demonstrate that the actual Retirement Board at the time would have reached the same decision regarding each of the 104 retired colonels absent application of race and gender classifications. *Christensen,* 60 Fed.Cl. at 28–29. The court directed the Secretary to make these determinations within six months. *Id.* at 29–30.

Within the period of the remand, the parties notified the court that they had reached a settlement agreement. Joint Motion for Preliminary Approval of Settlement Agreement, Approval of Notice to Class of Settlement And Scheduling of Hearing ("Settlement Mot."). In particular, the parties proposed that the court enter a judgment in favor of plaintiffs in the amount of $7,280,000.00. *Id.,* attach. 1, at 2 (Settlement Agreement). Each class member would receive $65,100.00, and class counsel separately would be paid 7% of the total award ($4,900.00 per plaintiff), for a total payment of $70,000 respecting each of the 104 plaintiffs. *Id.* at 2–3. The court granted preliminary approval of the proposed settlement agreement and concurrently approved the parties' proposal for providing notice of that agreement to each class member. Order dated Oct. 28, 2004.[3]

A high percentage of the class responded to the notice. Of the 104 members of the class, 101 communicated with class counsel. Hr'g Tr. at 6. All but one member of those responding recommended approval of the proposed settlement, although five additional plaintiffs expressed a desire for a further

3. RCFC 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

4. RCFC 23(e)(4)(A) provides that "[a]ny class member may object to a proposed settlement, voluntary dismissal, or compromise that requires court approval under Rule 23(e)(1)(A)."

element of relief. Each of these six persons commented that the amount of the settlement should be increased to reflect the larger retirement benefits that they would have received had they not been retired early. Hr'g Tr. at 6–7; *see also* Plaintiffs' Supplement to Plaintiffs' Status Report at 1–2 (statistical recapitulation and description of oral communication from Richard Glorioso); Pls.' Status Report at 29 (electronic mail message from David P. Fairclo), 35 (Settlement Participation Form of Robert H. Haden), 45 (Letter from George W. Hout), 50–51 (Settlement Participation Form of Steven K. Ladd), 54 (Settlement Participation Form of Melvin F. Lee requesting that the court not approve the settlement).[4] One of those colonels additionally expressed a preference that the Air Force follow through with its harmless-error analysis to identify and fully compensate the officers actually harmed. Pls.' Status Report at 45 (Letter from George W. Hout).

The parties filed supplemental briefs regarding the fairness of their proposed settlement agreement in January 2005, and a hearing was held the following month. The class members were invited to appear at that hearing to present their views, but all of the members declined that invitation.

## ANALYSIS

RCFC 23(e)(1)(A) provides that "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." The court may grant such approval "only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." RCFC 23(e)(1)(C). Federal courts have developed factors to guide analysis of this "fair, reasonable, and adequate" standard under the counterpart provisions of Fed.R.Civ.P. 23(e).[5]

5. RCFC 23 was amended in 2004 to "incorporate[] the revisions to [Fed.R.Civ.P.] 23 effective December 1, 2003. These revisions, which appear as subdivisions (c), (e), (g), and (h) of the rule, adopt the text of the federal rule except where modification in wording was necessary to accommodate the 'opt-in' character of this court's class action practice." RCFC 23 rules committee notes (2004 Amendment). *But cf. Moore v. United States,* 63 Fed.Cl. 781, 783 n. 3

Fundamentally, as Judge Friendly explained in writing for a panel of the Second Circuit in *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir.1982), two areas of inquiry are paramount:

> Determination whether a proposed class action settlement is fair, reasonable and adequate involves consideration of two types of evidence. The primary concern is with the substantive terms of the settlement: "Basic to this ... is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968) .... [T]o supplement the thus necessarily limited examination of the settlement's substantive terms, attention also has been paid to the negotiating process by which the settlement was reached ....

698 F.2d at 73–74.

Thus, in the Second Circuit, for example, trial courts "examin[e] the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.2001). In reviewing the procedural fairness of a settlement, the court examines whether the settlement resulted from "arms-length negotiations and [whether] plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Id.* (citation omitted). To review the fairness of the substantive terms of a settlement, the factors that courts in the Second Circuit consider include:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Id.* at 86 (citation omitted). Courts apply these factors in light of "the interest in encouraging settlements, particularly in class actions, which are often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C.Cir.1993); *see also Weinberger*, 698 F.2d at 73.[6]

The negotiating process leading up to the instant settlement agreement evidences the fairness, reasonableness, and adequacy of that agreement. The parties' counsel engaged in lengthy and adversarial settlement discussions prior to reaching the final terms of their proposed agreement. *See* Plaintiffs' Memorandum in Support of the Joint Motion for Preliminary Approval of Settlement Agreement, Approval of Notice to Class of Settlement And Scheduling of Hearing ("Pls.' Mem.") at 6; Government's Memorandum in Support of Preliminary Approval of Settlement ("Def.'s Mem.") at 4. That there was no collusion for plaintiffs' counsel's benefit is confirmed by the proposed attorney's fees of only seven percent of the settlement fund. *Compare Moore*, 63 Fed.Cl. at 787 (noting that class counsel's attorney's fees "typically range between 20% to 30% of the total fund"), *with Berkley v. United States*, 59 Fed.Cl. 675, 711–12 (2004) (attorney's fees set at 7% of fund), *and National Treasury Employees Union v. United States*, 54 Fed. Cl. 791, 807 (2002) (attorney's fees amounting

---

(2005) (commenting erroneously that RCFC 23(e) does not set out the "fair, reasonable, and adequate" standard).

**6.** In the D.C. Circuit, "[t]here is no single test" for application of Rule 23(e), and "the relevant factors may vary depending on the factual circumstances." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375 (D.D.C. 2002). The factors considered by courts in that circuit include procedural and substantive considerations similar to those quoted from *D'Amato, supra*. They include: "(a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the stage of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *Id.*

to 10% of common fund). In addition to pursuing this case for nearly five years, class counsel have recently represented classes in two related cases, *Berkley v. United States,* 59 Fed.Cl. 675, and *Alvin v. United States,* 50 Fed.Cl. 295 (2001), both of which resulted in settlement agreements approved by the court. Class counsel have demonstrated their experience and ability in military personnel litigation before this and other courts. *See Berkley,* 59 Fed.Cl. at 708–709.

The substantive terms of the parties' proposed settlement agreement further support finding that the agreement is fair, reasonable, and adequate. The considerations weighing most heavily in favor of this finding in the circumstances of this case are the class members' overwhelming demonstration of approval of those terms and the risks to both parties of litigation. Of the 101 members who responded to the notice of settlement, one hundred recommended that the court approve the agreement, and responses were received from all but three members. *See supra,* at 4. Considering that the government involuntarily retired the class members from service and that in doing so the government likely violated constitutional rights of at least some of those individuals, this high proportion of class support for the settlement agreement weighs strongly in favor of approval under RCFC 23(e). The one objector and the five additional members who expressed a desire for a higher amount of retirement benefits raise a concern that must be viewed in light of the risks that litigation would pose to the parties, as does the preference expressed by one member that the Air Force conduct a harmless-error analysis.

Following the Federal Circuit's decision in *Christian,* 337 F.3d 1338, and this court's decision in *Christensen,* 60 Fed.Cl. 19, there remains considerable uncertainty over what would result from the Air Force's application of harmless-error analysis to the 104 class members' individual circumstances.[7] One distinct possibility is that the Air Force would fail to proffer substantial evidence of harmless error with respect to some or all of the 104 retired colonels, in which case such colonels would be entitled to compensation based on the actual period during which they were prematurely retired. *See Christensen,* 60 Fed.Cl. at 28–30. With this scenario, however, the amount of back pay to which each retired colonel would be entitled would not be readily determinable by this court, given that the law requires that military back pay be offset by any civilian salary earned during the period, in this case, between the date on which such colonel was prematurely retired and the date on which he was scheduled to retire under his commission. *See Metz v. United States,* 61 Fed.Cl. 154, 173 (2004) (citations omitted). In the instant case, class members' service was prematurely ended by either three or five years, depending upon their year group.[8] Given the lack of evidence as to the average amount each class member would receive after appropriate offsets, and taking into account a curtailment of retirement benefits, it appears that the proposed net settlement amount of $65,100 per member is a reasonable, fair, and adequate settlement.

Alternatively, the Air Force may have been able to satisfy its evidentiary burden to prove that certain of the 104 retired colonels would have been selected for early retirement regardless of the unconstitutional provision in the Board's instructions.[9] In that event, such class members would recover nothing. That some or many of the class members may receive more from the settlement agreement than they would have received had the case been fully litigated to a

---

7. Pursuant to Air Force policy, the contemporaneous records were destroyed upon completion of the Board's decisions. *Christensen,* 60 Fed.Cl. at 28.

8. Because officers of the pertinent grade were required to retire after thirty years of service, 10 U.S.C. § 634, absent the Board's selections in 1994, those in the 1967–year group would have retired in 1997, and those in the 1969–year group would have retired in 1999.

9. The government has averred that of the officers not selected for involuntary retirement by the Board, 28 were minorities or females, *Christensen,* 60 Fed.Cl. at 21, suggesting that at most, a maximum of 28 of the 104 class members could have been harmed. In all events, it bears emphasis that it would be the government's ultimate burden to prove, on the basis of substantial evidence, that its error was harmless with respect to each individual class member. *Id.* at 23, 28–30.

conclusion does not call into question the fairness, reasonableness, or adequacy of the agreement in the circumstances of this case. *See* 4 Alba Conte & Herbert B. Newberg, *Class Actions* § 11.46 (4th ed.2002) ("the court may approve settlement even if it determines that the plaintiffs are receiving a windfall"). Instead, the risks faced by each side in the litigation weigh heavily in favor of approval of the settlement.

### CONCLUSION

For the reasons stated, the court finds that the parties' proposed settlement agreement is fair, reasonable, and adequate and therefore APPROVES that agreement.[10] The clerk is authorized to enter judgment in accord with the settlement agreement and the Stipulation for Entry of Judgment annexed to that agreement.

It also appears that two members of the class have died during the pendency of the litigation and that the representatives of their estates should be substituted for these deceased persons as plaintiffs. In that connection, Plaintiffs' Unopposed Motion for Substitution And Motion for Correction of a Class Member's Name, filed January 14, 2005, is GRANTED.

IT IS SO ORDERED.

---

**10.** The parties' proposed settlement agreement is set out at Attachment 1 to the Settlement Motion.