**Kevin J. METZ, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 00–540C.**

United States Court of Federal Claims.

May 31, 2005.

Gary R. Myers, Weare, NH, for plaintiff.

Christian J. Moran, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Robert E. Kirschman, Jr., Assistant Director. Of counsel was Major John Carr, Air Force Legal Services Agency–JACL, Arlington, VA.

---

10. The parties' proposed settlement agreement is set out at Attachment 1 to the Settlement Motion.

*OPINION AND ORDER
FOR JUDGMENT*

LETTOW, Judge.

In a prior decision, this court found that (1) former Master Sergeant ("MSgt.") Kevin J. Metz was improperly separated from the Air Force due to ineffective assistance of counsel in defending against a court-martial for a failed drug test, and in electing to seek a separation in lieu of court-martial, (2) MSgt. Metz's separation in lieu of court-martial would be set aside, and (3) his discharge under other than honorable conditions would be elided. *Metz v. United States*, 61 Fed.Cl. 154 (2004). To determine the scope of the monetary and non-monetary remedies appropriate for MSgt. Metz under the Military Pay Act, 37 U.S.C. § 204, and the Tucker Act, 28 U.S.C. § 1491(a), the court remanded the case to the Secretary of the Air Force. In the remand, the court asked the Secretary to determine the duration of MSgt. Metz's remaining enlistment, the amount of pay that MSgt. Metz would have earned had he completed his enlistment, the amount of civilian pay earned by MSgt. Metz that should be set off against his military pay, whether MSgt. Metz was entitled to serve an additional or extended enlistment, whether MSgt. Metz's enlistment would have expired prior to his becoming eligible for retirement, and whether he would be entitled to retirement. *Metz*, 61 Fed.Cl. at 174–75. Upon remand, the Secretary's designees determined that MSgt. Metz's enlistment would have expired on October 30, 1995, that he would be due $30,300.74, taking into account the offset for his civilian pay, that he would not be entitled to reenlistment, that he would not be entitled to retirement, that reenlistment would not have been granted had he applied, and that early retirement would have been granted had he applied. Air Force's Response to Remand Order ("Resp. to Remand") at 1–5.

MSgt. Metz filed a motion for judgment seeking $30,300.74 in back pay, early retirement as of October 31, 1995, early retirement pay in the E–7 grade from October 31, 1995 to the present and for the remainder of MSgt. Metz's natural life, and expurgation of the separation in lieu of court-martial from his record. Plaintiff's Notice ("Pl.'s Mot.") at 2. In its response, the government did not object to entry of judgment, with the notable exception of any award of retirement pay. The government contends that MSgt. Metz's entitlement ended with the termination of his enlistment and that any retirement would be discretionary with the Air Force. Defendant's Response to Plaintiff's Motion for Judgment ("Def.'s Resp.") at 3–5. For the reasons set forth below, the court grants judgment in favor of MSgt. Metz that includes early retirement and early retirement pay at the E–7 grade.

## BACKGROUND

MSgt. Metz enlisted in the Air Force in 1977 and had an exemplary record prior to the events in this case. *Metz*, 61 Fed.Cl. at 155. On April 29, 1994, he provided a urine sample as part of a routine drug screening, and his test returned positive for marijuana at a level marginally above the enforcement threshold. *Id.* His commanding officer preferred charges against MSgt. Metz for the wrongful use of marijuana, which charges indicated that the case would be tried by special court-martial. *Id.* at 155–56. MSgt. Metz claimed innocence. He was initially represented by an assigned counsel, an unnamed captain who was in the process of being reassigned and failed to assist him. Subsequently, he was represented by an assigned military counsel who thought he was a junior member of the legal team and not lead counsel, and by an experienced civilian attorney whose involvement was limited to reviewing the case file. *Id.* at 171. On the advice of the second military counsel, MSgt. Metz requested a discharge in lieu of trial by court-martial. *Id.* at 157. MSgt. Metz's request for discharge was approved by the chain of command, and he was discharged on September 8, 1994. *Id.* at 159.

After his discharge was complete, MSgt. Metz retained his present counsel, who had the urine sample analyzed by a laboratory which found that the sample contained the DNA of more than one person. *Metz*, 61 Fed.Cl. at 160. After receiving these results, MSgt. Metz appealed to the Air Force Board for Correction of Military Records

("AFBCMR" or "Board"), which denied his request for reinstatement on the grounds that he had failed to produce sufficient relevant evidence to demonstrate the existence of probable error or injustice. *Id.* at 161. In June 1999, a technician at the site where the urine sample was stored destroyed the sample after gaining approval for such destruction in spite of the Air Force's agreement with plaintiff's counsel that it would maintain the sample indefinitely. *Id.* at 162. After the destruction of the sample, MSgt. Metz filed a motion for reconsideration with the AFBCMR. In assessing the merits of this motion, the Board obtained an advisory opinion from the Air Force's personnel center, which determined that MSgt. Metz was not eligible for retirement because he had served less than twenty years and that he was not eligible for early retirement because he faced court-martial charges. *Id.* at 163. After considering MSgt. Metz's motion for nearly three years, on July 28, 2003, the Board denied MSgt. Metz's motion for reconsideration on the grounds that he had provided insufficient evidence of error or injustice; the Board discounted the DNA evidence because there was no showing of an error in the chain of custody of the sample. *Id.* The Board also concluded that the destruction of the urine sample was "'a good faith mistake.'" *Id.*

MSgt. Metz filed his complaint in this court on September 5, 2000, but proceedings were stayed pending resolution of his request for reconsideration before the Board. *Metz,* 61 Fed.Cl. at 163 n. 22. After the Board denied reconsideration in July 2003, this court addressed MSgt. Metz's claims. Because of the factual nature of the ineffective-assistance-of-counsel claim, the court held an evidentiary hearing, received post-hearing briefing from the parties, and thereafter found that MSgt. Metz had not received adequate assistance from his counsel, that this ineffective assistance had prejudiced MSgt. Metz, that he was denied "a reliable adversarial testing process," and, accordingly, that his separation from the Air Force was involuntary. *Id.* at 171–72. As relief, the court awarded MSgt. Metz back pay in an amount to be determined and ordered MSgt. Metz's separation to be set aside along with his discharge under other than honorable cir-

cumstances. *Id.* at 172. The court also ordered that he be restored to his position as Master Sergeant for the remainder of his enlistment and any additional service time to which he may be entitled and that, if eligible, he be placed in an appropriate retirement status. *Id.* at 174.

Because the court did "not have sufficient facts at hand to frame a back-pay order or to address MSgt. Metz's entitlement to retirement and other benefits," it remanded the case to the Secretary of the Air Force. *Metz,* 61 Fed.Cl. at 174. The court ordered that the Secretary "determine the appropriate amount of back-pay and other monetary and non-monetary benefits to which MSgt. Metz is entitled in light of the Court's holdings." *Id.* This order required the Secretary to determine (1) what portion of MSgt. Metz's enlistment was left unserved at the time of his separation, (2) the salary, other monetary benefits, and non-monetary benefits that he would have earned had he completed his enlistment, (3) how much MSgt. Metz earned in civilian pay to offset the back pay due, (4) whether MSgt. Metz would have been eligible for retirement upon completing such enlistment, (5) if not, whether he would be entitled to reenlistment and subsequent retirement, and (6) if he reached retirement eligibility, to what benefits he would have been entitled and the amount of those benefits. *Id.* On remand, the Secretary was directed to disregard an earlier advisory opinion from the Air Force's personnel center that included the erroneous legal conclusion that "'[t]here are no provisions of law to grant credit for unserved service.'" *Id.* at 173 n. 33. This advice ignored the constructive-service doctrine. *Id.*

On February 28, 2005, the government filed the Air Force's report from the remand. The Assistant Secretary of the Air Force for Manpower and Reserve Affairs, who was delegated Secretarial authority to take final action, determined that MSgt. Metz's enlistment would have been completed on October 30, 1995. Resp. to Remand at 5. The Assistant Secretary had requested an advisory opinion from the Air Force Personnel Council regarding whether MSgt. Metz would have been entitled to reenlistment or retire-

ment. The Personnel Council concluded that MSgt. Metz would not have been entitled to reenlist upon the completion of his enlistment. *Id.* "To address other issues implicit in the court's order," the Assistant Secretary had also requested that the Personnel Council determine whether MSgt. Metz would have been granted reenlistment if he had applied, or if he would have been granted early retirement if he had applied. *Id.* The Personnel Council issued a thorough advisory opinion, taking into account all of the available information, and determined that MSgt. Metz would not have been permitted to reenlist or extend his enlistment, but that he would have been granted early retirement had he applied. *Id.* at 7–11. With respect to the granting of an early retirement request, the Personnel Council's advisory opinion stated:

> Although [ ] the Council would not normally make a retirement determination after addressing an appeal of a retirement denial, the Council considered that question as requested. Notwithstanding its decision on the appeal of the denial of reenlistment, the Council believed that retirement was in the best interest of the Air Force. The Council noted that there were no inhibiting criteria that would render the applicant ineligible for TERA [Temporary Early Retirement Authority] under the scope of the remand. While the Council realized that there was no entitlement to a TERA retirement and that the retirement was still nonetheless discretionary, the Council believed that retirement was in the best interest of the Air Force given the tainted sample and the applicant's otherwise strong duty performance. As such, the Council determined that the evidence of record was strong enough to preclude reenlistment but was not sufficient to deny a discretionary retirement.

*Id.* at 11. The Director of the Air Force Review Boards Agency reviewed the Personnel Council's conclusion and concurred that MSgt. Metz would have been denied reenlistment, but would have been granted retirement under the provisions of the Temporary Early Retirement Authority. *Id.* at 17.

As part of the remand, the Chief of the Claims Branch of the Directorate of Debt and Claims Management determined that the appropriate amount of back wages owed to MSgt. Metz, adjusted for offsets, was $30,300.74. Resp. to Remand at 2.

The Assistant Secretary reviewed the evidence and adopted the Personnel Council's conclusion. Resp. to Remand at 5.

After the government filed its notice of the Air Force's response to the remand, MSgt. Metz moved for judgment, seeking back pay in the amount of $30,300.74, early retirement as of October 31, 1995, early retirement pay in the grade of E–7 from October 31, 1995 to the present and for the remainder of MSgt. Metz's natural life, and expurgation of all references to MSgt. Metz's separation from his record. Pl.'s Mot. at 2. As noted previously, the government objected only to the granting of retirement benefits. To consider the government's objection, the court held a hearing on the motion for judgment on May 18, 2005.

## ANALYSIS

This case was remanded to the Secretary of the Air Force in accord with 28 U.S.C. § 1491(a)(2): "[i]n any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." This court has the authority to review the Secretary's findings on remand and is required to issue an appropriate judgment based upon that review. *See Christian v. United States,* 337 F.3d 1338, 1349 (Fed.Cir. 2003).

### A. *Back Pay*

The first question is the amount of back pay to which MSgt. Metz is entitled. On remand, the Chief of the Claims Branch calculated the income MSgt. Metz would have earned from the day following his separation, September 9, 2004, to the date on which his enlistment would have been completed, October 30, 1995. *See* Resp. to Remand at 1–2. She then deducted MSgt. Metz's civilian pay during that period, as required by law. *See id.; Metz,* 61 Fed.Cl. at 173. She determined that the appropriate amount of back

Act "serves as the money-mandating statute applicable to military personnel claiming damages *and ancillary relief* for wrongful discharge") (emphasis added). Traditionally, such ancillary relief has included correction of military records to reflect an appropriate retirement grade and award of back pay for retirement benefits. *See, e.g., Casey v. United States,* 8 Cl.Ct. 234, 243 (1985) (awarding an enlisted member of the army who was denied due process "voluntary retirement in the pay grade of E–7, after 20 years of active duty service, with the appropriate back retirement benefits due from September 12, 1979 through the date of judgment"). In short, this court has jurisdiction, as an incident of and collateral to its juridical power to enter a money judgment under the Military Pay Act, to place MSgt. Metz in an appropriate retirement status, namely, that status determined by the Air Force on remand.

Second, the government argues that the pending court-martial would have barred early retirement. As a matter of law, service members undergoing court-martial procedures were not eligible for early retirement under TERA. Resp. to Remand at 8; *see also Loeh v. United States,* 53 Fed.Cl. 2, 5 (2002) ("A retired officer may also forfeit his retired pay if court-martialed.") (citations omitted). The determination of the Air Force Personnel Council took this circumstance into consideration. *See* Resp. to Remand at 8. Nonetheless, it found that "there were no inhibiting criteria that would render the applicant ineligible for TERA under the scope of the remand." *Id.* at 11. The Council and Air Force Assistant Secretary are in a far better position than the court to determine the likely consequences of the ineffective assistance MSgt. Metz received from counsel during court-martial proceedings and following those proceedings. Notably, at the time of MSgt. Metz's flawed election to seek an administrative separation in lieu of court-martial, he had over a year to serve until his enlistment would have been complete. *See supra,* at 5. Accordingly, the court accepts the Air Force's well-reasoned determination that, in the time remaining on his enlistment, MSgt. Metz would have been eligible for, and would have been accorded, early retirement under TERA.[4]

Third, the government claims that the Air Force's determination was hypothetical, and that MSgt. Metz did not in fact apply for early retirement. Def.'s Resp. at 3–4. This argument cuts against the Council's assumption that a service member with MSgt. Metz's seniority would have sought alternative relief at the time he or she applied for reenlistment. Specifically, the service member would have requested early retirement if reenlistment were denied. *See* Resp. to Remand at 7. In its briefing, the government does not address the actions MSgt. Metz would have taken had the ill effects of the ineffective assistance of his counsel been removed. It is readily apparent that in the circumstances of this case MSgt. Metz could not have made a conscious choice in 1994 and 1995 *not* to seek reenlistment or an early retirement as an alternative. The closest precedents the court has found involve conscious, knowing choices, not a reconstruction of what probably would have happened once a legal error had been removed. For example, in *Gant v. United States,* 918 F.2d 168, 170 (Fed.Cir.1990), the Federal Circuit held that a senior enlisted member's strategic decision to delay filing for retirement so as not to appear to be requesting a voluntary discharge forfeited his retirement pay during the delay. Three material circumstances distinguish this case from *Gant.* First, MSgt. Metz received ineffective assistance from counsel throughout the period of the court-martial and his request for administrative separation in lieu of court-martial. Second, it would have been futile for MSgt. Metz to apply for early retirement prior to the recognition that his separation was involuntary due to ineffective assistance of counsel. This futility is demonstrated by an earlier denial by the AFBCMR of MSgt. Metz's request for retirement. *See Metz,* 61 Fed.Cl. at 161.

---

4. The government also points to the fact that even if the court-martial had not been pending, MSgt. Metz would have been subject to board review. Def.'s Resp. at 4. The Air Force presumably knew of this possibility when it recommended MSgt. Metz for early retirement. *Cf. Clary,* 333 F.3d at 1352 (holding that a board's action leading to discharge of a Naval officer rendered the officer entitled to retirement pay).

Third, the court gives credence to the assumption made by the Air Force Personnel Council, based on its expertise, that a request for reenlistment would have been accompanied by a request for early retirement.

Accordingly, the court will adopt the determination on remand by the Assistant Secretary of the Air Force and the Director of the Air Force Review Boards Agency, based on the findings and recommendations of the Air Force Personnel Council, that MSgt. Metz would have been granted early retirement had he applied and that he would have so applied. MSgt. Metz is awarded early retirement as of October 31, 1995, retirement back pay, and future retirement pay in the grade of E–7.

### C. Correction of Records

In addition, MSgt. Metz requests that the court order that "all references to Plaintiff's separation on September 8, 1994 be expunged from Plaintiff's record to include Plaintiff's DD 214 and all documents relating to Plaintiff's separation in lieu of court-martial." Pl.'s Mot. at 2. The government has not indicated any opposition to this request. For good cause shown, MSgt. Metz's request to expunge is granted.

### CONCLUSION

For the reasons set forth above, plaintiff's motion for judgment is GRANTED. The clerk shall enter judgment awarding MSgt. Metz relief as follows:

(1) back pay in the amount of $30,300.74 for the period from September 9, 1994 through October 30, 1995;

(2) early retirement starting on October 31, 1995, back retirement pay in the grade of E–7 from October 31, 1995 to the present, and retirement pay for the remainder of MSgt. Metz's natural life;

(3) expurgation of all references to MSgt. Metz's separation in lieu of court-martial from his record.

Costs to plaintiff. *See* 28 U.S.C. § 2412(a); RCFC 54(d)(1).

It is so ORDERED.