**David Alan CARMICHAEL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–958C.

United States Court of Federal Claims.

June 23, 2005.

Herbert W. Titus, Chesapeake, VA, attorney of record for plaintiff David Alan Carmichael.

Lauren S. Moore, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Peter D. Keisler, for defendant. David M. Cohen, Director, and Robert E. Kirschman, Jr., Assistant Director.

Armando Rodriguez–Feo, United States Department of the Navy, of counsel.

## OPINION and ORDER

FUTEY, Judge.

This military pay case is before the court on the parties' cross-motions for summary judgment on Counts II and III of plaintiff's complaint, following a remand from the United States Court of Appeals for the Federal Circuit (Federal Circuit). As part of its remand instruction, the Federal Circuit carved-out four factors to guide this court's analysis. The Federal Circuit stated:

> We therefore remand for a hearing to determine Carmichael's claim. The trial court must determine whether at the time Carmichael sought religious accommodation, the Navy "wrongfully" failed to follow its own rules and procedures in considering his request (e.g., whether the agency had "no lawful authority" for its action), and whether any such failure "directly caused" Carmichael's separation. If these conditions are met, the trial court then must evaluate whether "a reasonable employee confronted with the same circumstance would feel coerced into resigning," and whether the Navy can show that it would have taken the same action after following proper procedures.

*Carmichael v. United States,* 298 F.3d 1367, 1376 (Fed.Cir.2002) (citations omitted). After conducting a telephonic conference with

the parties, this court resolved the first three questions in plaintiff's favor and ordered the parties to undertake discovery pertaining to the lone remaining issue: "whether the Navy can show that it would have taken the same action after following proper procedures." *Id.*[1] The parties' discovery proceedings consisted of conducting depositions of Captain Joseph Benkert, plaintiff's Commanding Officer, and Rear Admiral L.R. Marsh, Acting Deputy Chief of Naval Personnel (Acting DCNP),[2] as well as producing any documents relevant to the issue.

Plaintiff maintains that the Department of the Navy (Navy) failed to meet its burden of demonstrating that it would have denied his request for religious accommodation and discharged him, if proper procedures were followed. Plaintiff contends that the Navy's burden is not limited to the five factors set forth in Secretary of Navy Instruction (SEC-NAVINST) 1730.8(9)(a), but encompasses the entire instruction. Plaintiff avers that Captain Benkert and Rear Admiral Marsh would have sought, at a minimum, the advice of their respective staffs prior to rendering a decision, advice which was allegedly never obtained in this case. Plaintiff also maintains that there is no evidence that the Navy included materials concerning religious accommodations in either Captain Benkert's or Rear Admiral Marsh's training. Further, plaintiff contends that Rear Admiral Marsh did not have the authority to deny or, for that matter, decide, plaintiff's religious accommodation request. Plaintiff also asserts that even if Rear Admiral Marsh possessed authority to review the request, his decision and Captain Benkert's decision would not have been final, as an adverse decision could have been appealed to a higher authority

within the Navy. Plaintiff also maintains that the Navy did not consider whether reclassification or reassignment were viable options.

Defendant, on the other hand, avers that it sustained its burden of proof under the Federal Circuit's mandate. Defendant contends that the court's inquiry, as established by the Federal Circuit, should assume that proper procedures were followed and focus solely on whether the Navy demonstrated that the final decision would have been the same. Stated another way, defendant maintains that the inquiry should focus on SECNA-VINST 1730.8(9)(a)'s five factors, and on whether the Navy would have denied plaintiff's religious accommodation request. Defendant also maintains that Captain Benkert and Rear Admiral Marsh unequivocally testified that they would have denied plaintiff's religious accommodation request after considering the factors set forth in SECNA-VINST 1730.8(9)(a). Further, defendant asserts that there is no evidence indicating that a denial of a religious accommodation request could be appealed to a higher authority. Lastly, defendant avers that plaintiff never submitted a request for reassignment or reclassification, and, in any event, SECNA-VINST 1730.8(9)(b) is phrased in permissive terms and does not dictate any particular administrative action.

### Factual Background [3]

When plaintiff entered active duty on July 11, 1980, he was assigned a Military Personnel Identification Number (MPIN), which corresponded to his social security number. At that time, and for many years afterwards, plaintiff did not object to being identified in this manner. By October 1, 1996, however,

---

1. See also *Carmichael v. United States*, No. 99–958C, slip op. at 1–2 (Fed.Cl. June 9, 2004) (discovery order); Transcript of Oral Argument (Tr.) at 3–4, 38.

2. The parties dispute Rear Admiral Marsh's title/position on the date in question. Given the court's ultimate conclusion in this case, the court will assume that Rear Admiral Marsh was properly delegated authority to review plaintiff's request.

3. The facts of this case were discussed in detail in the court's initial opinion on jurisdiction, *Car-*

*michael v. United States*, No. 99–958C, slip op. at 2–6 (Fed.Cl. Oct.31, 2000), and were reiterated in the court's opinion concerning plaintiff's "firm" right to an extension of enlistment, *Carmichael v. United States*, No. 99–958C, slip op. at 2–5 (Fed.Cl. Oct.7, 2003). Furthermore, the facts were again restated in the Federal Circuit's decision, *Carmichael*, 298 F.3d at 1370–71. The court, therefore, finds it unnecessary to describe the entire factual background here, but will only discuss the factual information most pertinent to this stage of the litigation.

plaintiff's religious beliefs led him to the conclusion that a social security number was the "Number of the Beast" as discussed in Chapter 13 of the Book of Revelation in the New Testament of the Bible. Plaintiff, therefore, sought to eliminate any association or identification with a social security number. To accomplish this end, plaintiff submitted a request to have his MPIN changed, as the MPIN was based on plaintiff's social security number.[4] Plaintiff indicated, in his request, that he understood:

> the [N]avy requires an identification number to maintain orderly files on each service member ... [and did] not object to organizations assigning an accounting number to files that referred to [him] as long as that number [was] not used by other organizations as an identifier like unto that described in Revelation, [C]hapter 13.[5]

Plaintiff also suggested that "[f]or tax reporting purposes, the number 000–00–0000 or the words religious objector may be placed in the Social Security Number/Employer Identification Number block on all Internal Revenue Service [IRS] forms ...."[6] On February 11, 1997, Rear Admiral Marsh, who signed the letter as Acting DCNP, denied plaintiff's request without reference to the Navy's religious accommodation policy.

Plaintiff initially sought review before the Board for Correction of Naval Records, which denied his application on May 24, 1999. Plaintiff consequently filed suit in this court on November 29, 1999. The court, however, after examining the parties' briefs and hearing oral argument, ruled that it lacked subject matter jurisdiction over plaintiff's complaint because he failed to rebut the presumption of voluntariness that attached to his discharge.[7] Plaintiff subsequently appealed the court's dismissal of his action to the Federal Circuit, which reversed this court's decision and remanded with instructions for further proceedings. *Carmichael,*

298 F.3d at 1367–77. Prior to addressing the Federal Circuit's listed factors, the court, recognizing the line of cases holding that a plaintiff's recovery in military back pay cases is limited to the pay allegedly due between the unlawful discharge and the end of the enlistment period, *sua sponte* ordered the parties to brief the issue of whether the court had jurisdiction over plaintiff's claims beyond March 17, 1997. Although the court held that plaintiff's enlistment was not actually extended, the court concluded that plaintiff possessed a "firm" right to an extension of enlistment until January 17, 1999.[8]

Having established a purported entitlement to back pay beyond his technical discharge date, plaintiff's claim now confronts the Federal Circuit's mandate. Despite possessing a "firm" right to an extension of enlistment, plaintiff would not be entitled to recover under Counts II and III of his complaint if the Navy's error was found to be harmless. Nevertheless, plaintiff is armed with the Federal Circuit's conclusion that his request for all practical purposes constituted a request for religious accommodation. *Carmichael,* 298 F.3d at 1372–76. That determination, however, only gets plaintiff so far. The Federal Circuit also noted that "there is no evidence in the record that [plaintiff's] request procedurally was treated as a request for religious accommodation, or that it would have been denied had it been so treated." *Id.* at 1376. There can be no dispute that plaintiff's request originally was not analyzed in accordance with SECNAVINST 1730.8; therefore, the analysis naturally gravitates toward the latter half of the Federal Circuit's statement. Had the Navy treated plaintiff's request as one for religious accommodation, several regulations, which are set forth in detail below, would have been applicable to its decision.

The Navy adopted an internal policy which permitted the "accommodat[ion][of] doctrinal

---

4. Plaintiff also submitted a request to the Commissioner of Social Security to have his social security number rescinded. Administrative Record (AR) at 215–20.

5. *Id.* at 214.

6. *Id.*

7. *Carmichael v. United States,* No. 99–958C, slip op. at 10–11 (Fed.Cl. Oct.31, 2000).

8. *Carmichael v. United States,* No. 99–958C, slip op. at 10, 13 (Fed.Cl. Oct.7, 2003).

or traditional observances of the religious faith practiced by individual members when they will not have an adverse impact on military readiness, individual or unit readiness, unit cohesion, health, safety, or discipline." SECNAVINST 1730.8(4); see also Department of Defense Directive 1300.17 (Feb. 3, 1998). To prevent an overly broad construction of the Secretary's instruction, the policy contained the following limiting clause: "[a]ccommodation of a member's religious practices cannot be guaranteed at all times but must depend on military necessity. Determination of necessity rests entirely with the commanding officer." SECNAVINST 1730.8(4)(a). Further, the Navy qualified its policy by stating that "[n]othing in these guidelines except as expressly provided herein shall be interpreted to require a specific form of accommodation in individual circumstances." Id. 1730.8(4)(b). Therefore, while the Navy contemplated the granting of requests for religious accommodation, the accommodation could not unnecessarily infringe on the Navy's ability to fulfill its stated mission.

The Navy's policy enumerated several categories which apparently had been the subject of previous requests for religious accommodations: religious observance, dietary observance, immunizations, and uniforms. Id. 1730.8(5)-(8). Requests in these categories were not automatically granted, but involved the application of distinct balancing tests. Id. As evidenced by the dispute currently pending before the court, requests would arise which did not fall into the Navy's defined categories. The Navy's policy, therefore, set forth procedures and standards for consideration of requests for religious accommodations in general:

a. Commanders and commanding officers may approve requests for religious accommodations within the guidelines of this instruction. To promote standard procedures for resolving difficult questions involving accommodation of religious practices, commanding officers shall consider the following factors. These factors recognize that each command may be affected by different conditions and require individual consideration of each request. These factors are:

(1) The importance of military requirements, including individual readiness, unit readiness, unit cohesion, health, safety, morale and discipline.

(2) The religious importance of the accommodation to the requester.

(3) The cumulative impact of repeated accommodations of a similar nature.

(4) Alternative means available to meet the requested accommodation.

(5) Previous treatment of the same or similar requests, including treatment of similar requests made for other than religious reasons.

Id. 1730.8(a)(1)-(5). After considering these factors, the commanding officer or commander could either grant the request or deny it. The Navy recognized, however, that denial of the request may not in every circumstance end the matter. The Navy's instruction, therefore, provided the following administrative options:

When requests for accommodation are not in the best interest of the unit but continued tension between the unit's requirements and the individual's religious beliefs is apparent, administrative action is authorized. Administrative action may include, but is not limited to, reassignment, reclassification, or separation consistent with SECNAV and service regulations. Nothing in this instruction precludes action under the Uniform Code of Military Justice in appropriate circumstances.

Id. 1730.8(9)(b). Although phrased in permissive terms, SECNAVINST 1730.8(9)(b) at a minimum lists several available administrative options.

The Navy also instituted measures to ensure that its religious accommodation policy was administered by informed decision-makers. The policy attacked the issue from two perspectives—seeking to educate both the individuals at the command level who were responsible for making decisions concerning requests for religious accommodation as well as the individual members making the requests. See id. 1730.8(10). For example, the Navy's policy informed individual members of their rights with respect to religious accommodations as follows:

The CNO [Chief of Naval Operations] and CMC [Commandant, Marine Corps] shall provide the statement of DON [Department of the Navy] policy on accommodation of individual religious practices and military requirements in paragraphs 4 and 4a of this instruction to applicants for commissioning, enlistment, and reenlistment, and require a signature acknowledging DON policy.

*Id.* 1730.8(10)(a). On the other hand, to educate command level personnel, the policy states that "[t]he CNO and CMC shall incorporate relevant materials on religious traditions, practices, and policies, this instruction, and reference (a), in curricula for command, judge advocate, chaplain, and similar courses and orientations." *Id.* 1730.8(10)(b).

The Navy's policy also designates the departments which shoulder burdens of responsibility with respect to religious accommodations. The Assistant Secretary of the Navy Manpower in Reserve Affairs (ASN(M & RA)) "is responsible for overall policy control and program execution." *Id.* 1730.8(11). Further, "[t]he CNO and the CMC are responsible for implementing the policies and procedures in this instruction." *Id.* 1730.8(11)(a).

SECNAVINST 1730.8 provides extensive instructions in the area of religious accommodations, however, it is not in this instance the only regulation touching upon the issue. Although SECNAVINST 1730.8(4)(a) indicates that a "[d]etermination of necessity rests entirely with the commanding officer," Military Personnel Manual 4610100.1 expressly provides that the "[MPIN] may be changed only upon approval by the Chief of Naval Personnel [CNP]." The Federal Circuit recognized the tension between the two provisions, but did not answer the question of whether one provision necessarily yields to the other. *Carmichael,* 298 F.3d at 1375. Stated another way, while the commanding officer could determine that the factors for granting a religious accommodation request were satisfied, that same commanding officer apparently could not change a member's MPIN. Rather, it appears that approval would be required from the CNP. Converse-

ly, the question would then become whether the CNP could make an independent determination regarding military necessity or would the CNP be bound by the commanding officer's conclusion.

The above-listed Navy regulations were primarily the areas covered during Captain Benkert's and Rear Admiral Marsh's depositions. Both witnesses concluded that they would have denied plaintiff's religious accommodation request. The regulations were also the subject of plaintiff's requests for production of documents, which was granted-in-part and denied-in-part.[9] After completing said discovery, defendant filed its motion for summary judgment on November 30, 2004. On January 19, 2005, plaintiff responded and cross-moved for summary judgment. Defendant filed its responsive pleading on March 2, 2005, and submitted a notice of supplemental authority on March 15, 2005. Plaintiff replied on March 29, 2005, and on May 18, 2005, filed a motion for leave to file supplemental authority. The court held oral argument on May 19, 2005.

### Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Sec'y of DHHS,* 998 F.2d 979, 982 (Fed.Cir. 1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1563 (Fed.Cir.1987). Alternatively, if the moving party can show there is an absence of evi-

---

9. *Carmichael v. United States,* No. 99–958C (Fed.    Cl. June 9, 2004) (discovery order).

dence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984).

The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co., Inc. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987)). A cross-motion is a party's claim that it alone is entitled to summary judgment. *A Olympic Forwarder, Inc. v. United States,* 33 Fed.Cl. 514, 518 (1995). It, therefore, does not follow that if one motion is rejected, the other is necessarily supported. *Id.* Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *Id.* (citing *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992)).

Prior to examining the crux of the parties' dispute, several preliminary issues warrant attention. First, relying on the *Kindred* rule, plaintiff now argues that it is improper for the court to make an "after-the-fact" determination as to what the Navy would have done had it followed proper procedures. See *Kindred v. United States,* 41 Fed.Cl. 106 (1998). Plaintiff contends that "legally," as a matter of law, the Navy cannot show that it would have taken the same action.[10] Plaintiff also appears to argue that a proper method by which to resolve the issue before the court is to reinstate him in the Navy so that he may submit a renewed request for religious accommodation.

Although plaintiff subsequently modified his position, it is noteworthy that plaintiff adamantly argued, when the case was initially remanded from the Federal Circuit, that the case should not be sent back to the Navy for a determination.[11] For that matter, as previously relied upon by plaintiff, the Federal Circuit unambiguously remanded the case to the "trial court [for a hearing]" to make the necessary "determin[ations]" and "evaluat[ions]." *Carmichael,* 298 F.3d at 1376. Further, the Federal Circuit's plain language only requires the Navy to show "that it *would have* taken the same action," *id.* (emphasis added), and did not mandate that the Navy actually take those steps to satisfy its burden. In addition, the Federal Circuit had the *Kindred* case and its reasoning before it, as plaintiff cited the case in its brief on appeal.[12] If, as a matter of law, there was no possible basis upon which the Navy could prevail, there would have been no need for a substantive remand to this court. The Federal Circuit could simply have done what it did in *Wagner* and ordered this court to enter judgment for plaintiff. See *Wagner v. United States,* 365 F.3d 1358, 1365 (Fed. Cir.2004). As plaintiff is well-aware, it did not do so. Therefore, *Kindred* is not controlling in this instance.

The court also would be hard-pressed to analogize plaintiff's claim to the claim in *Wagner,* which falls into the category of cases where substantive review of the agency's discretion would not be appropriate. In *Wagner,* the Secretary was required to approve separation proceedings when an officer had completed eighteen or more years of service. *Wagner,* 365 F.3d at 1359. The Federal Circuit held that the Secretary's decision would have been unreviewable because the Secretary was provided with unbridled discretion, *i.e.,* because standards to assess or quantify the decision were lacking. *Id.* at 1364–65. In contrast, there are several factors and provisions which directly bear on and constrain the decision-maker's authority

10. Tr. at 37–39.

11. Joint Status Report (filed Mar. 14, 2003) (explaining that "plaintiff believes that the factual and legal issues in this case can only be resolved

by an evidentiary hearing before the [c]ourt …").

12. Brief for Plaintiff–Appellant, 2001 WL 34629662, at *23 (Fed.Cir. Feb.13, 2001).

in this case. For that matter, in *Wagner*, the Federal Circuit indicated, expressly relying on its decision in *Carmichael*, that "[w]here reviewable standards or factors constrain the exercise of discretion, harmless error continues to be the appropriate test." *Id.* at 1365 (citing *Carmichael*, 298 F.3d at 1375–76 ("remanding for evaluation of, inter alia, whether the Navy would have denied a serviceman's religious accommodation request under the factors set out by the Navy's accommodation procedures")). Accordingly, plaintiff provides no basis upon which to question the procedural aspects of the court's remand analysis.

Next, defendant argues that the Federal Circuit, in its instruction to the court, "has presupposed that Captain Benkert and [Rear] Admiral Marsh have followed the procedures required by SECNAVINST 1730.8." [13] Contrary to defendant's assertion, the court reads no such statement in the Federal Circuit's opinion. Under defendant's rubric, the Navy could simply produce witnesses to conclude that plaintiff's request would have been denied irrespective of whether proper procedures were followed. This is a variation of the very argument previously rejected by the Federal Circuit— the mere fact that the CNP made the final decision without regard to regulations applicable to religious accommodation requests did not vitiate the error. *Carmichael*, 298 F.3d at 1375. Rather, the burden is on the Navy to demonstrate how it would have processed plaintiff's request for a religious accommodation under the mandates of applicable instructions and regulations. The focus here is on the means *and* the end, for the means dictate the end. The Navy has already once disregarded the applicable regulations and to allow it to do so again in the context of a harmless error analysis would permit the Navy to commit the same mistake twice and avoid any accountability for its actions. It would also ensure that plaintiff's request would never receive the treatment it was entitled to pursuant to Navy regulations. Hence, if defendant cannot demonstrate that the Navy's conclusion is the result of proper application of Navy regulations, defendant has failed to meet its burden and plaintiff prevails.

The court also takes this opportunity to recognize the plethora of authority mandating judicial deference in the area of military affairs. *North Dakota v. United States*, 495 U.S. 423, 443, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990) ("When the Court is confronted with questions relating to military discipline and military operations, we properly defer to the judgment of those who must lead our Armed Forces in battle."); *Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("[J]udges are not given the task of running the Army."); *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.1988) ("Judicial deference must be 'at its apogee' in matters pertaining to 'the military and national defense."); *Filtration Dev. Co., LLC v. United States*, 59 Fed.Cl. 658, 661–62 (2004); *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804 (1979) ("Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters."). Nevertheless, despite the benefit of deferential review, it is well-established that the burden is on the Navy in this case to "proffer 'substantial evidence' showing that 'the error or injustice was truly harmless.'" *Christensen v. United States*, 60 Fed.Cl. 19, 29 (2004) (quoting *Sanders*, 219 Ct.Cl. at 310, 594 F.2d 804). It is against this backdrop that the court proceeds with its analysis.

Turning to the crux of Captain Benkert's and Rear Admiral Marsh's testimony, the court finds that their deposition testimony established that the Navy would have denied plaintiff's request had it been treated in accordance with regulations and instructions governing religious accommodations. During their respective depositions, Captain Benkert and Rear Admiral Marsh described how they would have analyzed SECNAVINST 1730.8(9)(a)'s five factors. While plaintiff criticizes the lack of staff input in Captain Benkert's and Rear Admiral Marsh's analysis, plaintiff's argument is undercut by several propositions. Plaintiff cannot dispute

---

**13.** Defendant's Response To Plaintiff's Cross-Motion For Summary Judgment And Reply To Plaintiff's Opposition To Defendant's Motion For Summary Judgment (Def.'s Resp.) at 30.

that not all the factors in SECNAVINST 1730.8(9)(a) require staff assistance to be properly addressed. In addition, it is apparent that portions of the information already contained in the administrative record would have been similar to the information which would have been gathered by the staff. The court is, therefore, persuaded that Captain Benkert's and Rear Admiral Marsh's deposition testimony, with respect to the five factors set forth in SECNAVINST 1730.8(9)(a), adequately reflects the decision the Navy would have made.

As an initial matter, neither Captain Benkert nor Rear Admiral Marsh doubted the importance of the request to plaintiff or his religious conviction.[14] No staff input was necessary to reach this conclusion. Accordingly, both witnesses viewed the second factor in a manner favorable to plaintiff.

As to factor number three, Captain Benkert and Rear Admiral Marsh concluded that a negative impact would result from "repeated accommodations of a similar nature." SECNAVINST 1730.8(9)(a)(3). This factor on its face does not distinguish between military impact and administrative impact, and both aspects, therefore, were properly taken into account. Rear Admiral Marsh indicated that "[i]f you kept changing the number, and allowed everybody to change the number, it would be very, very difficult to administer. Almost, I'd say, impossible, and result, in a lot of inequities."[15] Captain Benkert echoed these sentiments: "repeated accommodations of a similar nature ... could pose a problem for the effective administration, which would have an impact on military readiness."[16] The court defers to Captain Benkert's and Rear Admiral Marsh's conclusion in this regard.

The court likewise concurs with the conclusions reached with respect to factor number five. Captain Benkert and Rear Admiral Marsh both noted the limited instances where requests for a change of an MPIN had been granted. Although the Federal Circuit indicated that the Judge Advocate General (JAG) report was not a conclusive assessment of plaintiff's request for a religious accommodation, see *Carmichael,* 298 F.3d at 1376, Captain Benkert relied on the JAG report for information pertaining to "[p]revious treatment of the same or similar requests, including treatment of similar requests made for other than religious reasons." SECNAVINST 1730.8(9)(a)(5). The court accepts the information in the JAG report with respect to factor number five because it in all likelihood would have been the same information that would have been compiled by the staff, and appears to be objective information obtained from Navy records.[17] Specifically, the JAG report set forth the following:

> Requests to change MPINs have been made for other than religious reasons, but apparently only granted when the SSA [Social Security Administration] assigned a different SSN [Social Security Number]. According to the Bureau of Naval Personnel, these requests were granted under the following limited circumstances: when the wrong SSN was entered as the MPIN and later corrected; when more than one SSN was assigned to an individual and one is chosen as the MPIN; or, when an individual enters a witness protection program (or similar program) and receives a new identity and SSN.[18]

Rear Admiral Marsh also went through a list of "practical reasons" where an MPIN had been changed in the past: (1) the individual entered the Navy without a SSN, (2) an individual was mistakenly assigned a number already being used, and (3) an incorrect number was initially entered.[19] On the basis of the information derived from Navy records and included in the administrative record, the court does not take issue with Captain Benkert's and Rear Admiral Marsh's position

---

14. Defendant's Attachment to Motion For Summary Judgment (Def.'s Att.) 41–42, at 21–22; *Id.* 79, at 94–95.

15. *Id.* 79, at 95.

16. *Id.* 48, at 47–48.

17. See *id.* 50, at 54–55.

18. AR at 85–86 (footnotes omitted).

19. Def.'s Att. 80, at 99–100.

that they viewed the fifth factor in a manner adverse to plaintiff.

As to factor number one, however, the court disagrees with Captain Benkert's and Rear Admiral Marsh's deposition testimony. The deposition testimony extensively referenced Secretary of the Navy Notice 1070 (Dec. 1, 1971), Naval Military Personnel Manual article 4610100.1, and Executive Order 9397 (Nov. 22, 1943). Although the court is confident that this information would have been provided to Captain Benkert and Rear Admiral Marsh by their staffs, the Federal Circuit made clear that these "requirements," standing alone, do not dictate the denial of a religious accommodation request. *Carmichael,* 298 F.3d at 1374. The Federal Circuit also explained that Executive Order 9397 did not mandate the substitution of a social security number for the MPIN. *Id.*

In any event, given the existence of the so-called "pseudo-number," the court calls into question the accuracy of Captain Benkert's and Rear Admiral Marsh's analysis. DFAS Pay/Personnel Manual B90102(d) provides that: "The member's Social Security number in XXX–XX–XXXX format is printed here. If no SSN is available, BUPERS [Bureau of Naval Personnel] will assign a pseudo-number pending receipt of the SSN. Pseudo SSNs assigned by BUPERS will begin with 8."[20] Captain Benkert and Rear Admiral Marsh reasoned that a "pseudo-number" was only to be used temporarily when no social security number was available and could not be used as a permanent substitute.[21]

Both witnesses, however, possessed limited expertise or knowledge with respect to social security numbers. Nothing in the Personnel Manual precludes the use of a "pseudo-number" in the context of a religious accommodation. Given the Navy's policy regarding religious accommodations, Captain Benkert's and Rear Admiral Marsh's interpretations are overly strict and lack a foundation in the record. There was scant evidence presented concerning the exact time-frame in which "pseudo-numbers" were utilized. Any evidence that assigning an individual a "pseudo-number" resulted in an adverse impact on "military requirements," as defined within SECNAVINST 1730.8(9)(a)(1), is contradicted by the establishment of a system which recognizes "pseudo-numbers." In other words, the existence of a sanctioned provision which acknowledges "pseudo-numbers" is prima facie evidence that the substitute number was an acceptable method, conforming to military requirements, of identifying a member.

Despite the court's disagreement with Captain Benkert's and Rear Admiral Marsh's conclusion concerning factor number one, the court agrees with their assessment with respect to factor number four that there were no alternative means available to meet plaintiff's request. Rear Admiral Marsh stated that substituting "000–00–0000" was a not a feasible option, and that writing in the terms "religious objector" would not be recognized by any Navy system.[22] Captain Benkert likewise could not envision use of the term "religious objector."[23] Plaintiff's reliance, however, on the "pseudo-number" as an alternative under factor number four, is foreclosed by the Navy's IRS reporting requirement. Although plaintiff did not object to being associated with an MPIN that was not a social security number, plaintiff refused to be associated in any respect with a social security number.[24] Assuming that the Navy would have changed plaintiff's MPIN to a "pseudo-number," or contemplated the implementation of additional alternatives, it is apparent that plaintiff still would have objected to the Navy including his social security number on IRS forms.[25] The court, there-

---

**20.** AR at 240.

**21.** Def.'s Att. 47, at 42; *Id.* 70, at 61–62.

**22.** *Id.* 79–80, at 97–98.

**23.** *Id.* 49, at 50–51.

**24.** AR at 214.

**25.** The Federal Circuit stated that "the Navy's general obligations as an employer to identify employees by Social Security number in reports to the [IRS] [are irrelevant to this appeal] . . . ." *Carmichael,* 298 F.3d at 1374–75. The court, however, does not read this statement to mean that the IRS reporting requirement is "irrelevant" in the context of addressing a religious accommodation request.

fore, concludes that Captain Benkert and Rear Admiral Marsh properly resolved the fourth factor against plaintiff.

There is no doubt that plaintiff's request constituted a "difficult question[ ]" within the meaning of SECNAVINST 1730.8(9)(a). It is equally established that the Navy is entitled to deference in the execution of its affairs. Although Captain Benkert and Rear Admiral Marsh did not technically receive staff input which directly addressed the religious accommodation question, the administrative record contained the pertinent objective information and several factors lent themselves toward individual consideration. Given the deference to be afforded military decisions and given that Captain Benkert's and Rear Admiral Marsh's deposition testimony pointed toward denying plaintiff's claim, the court holds that the Navy demonstrated it would have taken the same action with respect to the five factor test in SEC-NAVINST 1730.8(9)(a).

The resolution of that issue does not answer the Federal Circuit's question in its entirety and, therefore, does not end the court's inquiry. The Federal Circuit did not limit the remand analysis to solely ascertaining whether the Navy would have denied plaintiff's religious accommodation request. Rather, the Federal Circuit's instruction required the Navy to show that it would have taken the same action, i.e., that the Navy would have discharged plaintiff after denying his religious accommodation request. See *Carmichael*, 298 F.3d at 1376. Several additional provisions within SECNAVINST 1730.8, apart from 1730.8(9)(a), bear on the issue in this case. In particular, SECNA-VINST 1730.8(9)(b) and 11(a). It is within the confines of these provisions that the Navy's shortcomings are illuminated.

First, the court is not convinced that the natural course of events, after a denial of plaintiff's request for religious accommodation and proper consideration of relevant factors, would have culminated in plaintiff's automatic separation. Pursuant to SECNA-VINST 1730.8(9)(b), "[w]hen requests for

accommodation are not in the best interest of the unit but continued tension between the unit's requirements and the individual's religious beliefs is apparent, administrative action is authorized." That provision also provides a non-exclusive list of what may constitute administrative action: "reassignment, reclassification, or separation consistent with SECNAV and service regulations." SECNAVINST 1730.8(9)(b). Defendant argues that plaintiff's request only sought a change of MPIN and did not encompass either reassignment or reclassification. Specifically, defendant contends that if plaintiff "desired to be reassigned as a Command Career Counselor, or any other position not requiring a social security number, he should have requested that at the time." [26]

The court does not give credence to defendant's argument that it was not obligated to consider the alternatives in SECNAVINST 1730.8(9)(b) simply because plaintiff failed to request such relief. There is no requirement in 1730.8(9)(b) that only a specific request to that effect triggers its consideration. Given that relevant materials on SECNAVINST 1730.8 were to be incorporated in instructions to command personnel, it would appear that individuals addressing a request for religious accommodation should have referenced 1730.8(9)(b) irrespective of whether the member specifically requested such an accommodation. SECNAVINST 1730.8(10)(b). In addition, as will be discussed in greater detail below, it appears that administrative action would have been considered on appeal even if it was not considered by Captain Benkert or Rear Admiral Marsh.[27] Further, the court finds difficulty faulting plaintiff for not submitting a request which directly cited SEC-NAVINST 1730.8(9)(b). Defendant overlooks that plaintiff's lack of awareness as to that particular provision stems from the Navy's antecedent failure to comply with SECNAVINST 1730.8(10)(a).[28] In other words, had plaintiff been privy to the religious accommodation policy prior to submitting his request, he could have requested

---

26. Def.'s Resp. at 29.

27. AR 241–42.

28. Carmichael Affidavit (Carmichael Aff.) ¶ 6.

administrative action in accordance with SECNAVINST 1730.8(9)(b).

Turning to the merits of SECNAVINST 1730.8(9)(b), it cannot be contested that there was an unavoidable "tension" in this case between the Navy's MPIN requirement (as a social security number) and plaintiff's religious beliefs. The Navy was, therefore, authorized to take administrative action. SECNAVINST 1730.8(9) is prefaced with the instruction that "each command may be affected by different conditions and require individual consideration of each request." Had plaintiff's request received "individual consideration," Captain Benkert and Rear Admiral Marsh would have discerned that plaintiff "began working as a Command Career Counselor [in the fall of 1989], a position to which [he] was designated on January 16, 1990 …."[29] It is possible that plaintiff could have been, to use defendant's words, "reassigned as a Command Career Counselor[ ] or any other position not requiring a social security number,"[30] or, for that matter, a security clearance. While defendant argues that the decision would have been based, in part, on what was available at the time,[31] this argument merely confirms that it is uncertain as to what the Navy would have done.

In addition, no evidence has been proffered concerning "separation consistent with SEC-NAV and service regulations." SECNAVINST 1730.8(9)(b). Had this provision been given its due consideration, it is possible that plaintiff's "firm" right to an extension of enlistment until January 17, 1999, would have been taken into account. While the considerations in SECNAVINST 1730.8(9)(b) are physically separated from the five-factor analysis of 1730.8(9)(a), they nevertheless are an integral component of the religious accommodation process. Accordingly, the court finds that the Navy has failed to meet its burden with respect to SECNAVINST 1730.8(9)(b).[32]

Second, the court does not believe that the Navy met its burden of showing that it would have taken the same action because Captain Benkert and Rear Admiral Marsh would not have been the final decision-makers. Plaintiff attested that he would have exhausted his appeals within the chain of command and "appealed any adverse decision by a commanding officer or by any officer within [the Navy]—including any decision that either Captain Joseph Benkert or [Rear] Admiral Marsh would have made—to the [CNO], and ultimately, to the [ASN(M & RA)]."[33] Although Captain Benkert stated that he "[didn't] know" if his decision could have been appealed,[34] Rear Admiral Marsh indicated that the CNO would have had the "ultimate say."[35] Rear Admiral Marsh elaborated that the CNO was "over" the CNP, and also agreed that the "CNO had authority to reverse" a decision which had been delegated down the ranks.[36] Rear Admiral Marsh also alluded to the possibility of an appeal to the ASN(M & RA).[37]

The opportunity for review by higher authority within the Navy is also evidenced by the text of SECNAVINST 1730.8. Paragraph 11 provides that the "ASN(M & RA) is responsible for overall policy control and program execution." Paragraph 11(a) states that "[t]he CNO and the CMC are responsible for implementing the policies and procedures in this instruction." For these provisions to have any meaning, the CNO and the ASN(M & RA) could not be excluded from

---

29. *Id.* ¶ 4.

30. Def.'s Resp. at 29.

31. Def.'s Att. 39, at 11.

32. In contrast to the analysis employed in resolving SECNAVINST 1730.8(9)(a)'s five-factor test, this line of reasoning presupposes that the IRS reporting requirement should not factor into the court's analysis. Nevertheless, assuming that reassignment or reclassification were not viable options because of the IRS reporting requirement, the Navy still has failed to demonstrate

that it would have separated plaintiff without taking into account his "firm" right to an extension of enlistment and attendant benefits.

33. Carmichael Aff. ¶ 17.

34. Def.'s Att. 44–45, at 33–34.

35. *Id.* 76, at 82.

36. *Id.* 77, at 86–87.

37. *Id.* 77, at 87.

the decision-making process. If the CNO did not have a role in the process, it would have been difficult for him to "implement[ ] the policies and procedures in [the] instruction." Likewise, if the ASN(M & RA) had no say in the decision, it is difficult to imagine how he would have exercised "responsib[ility] for overall policy control and program execution."

In addition, SECNAVINST 1730.8(8), which addresses "Uniforms," expressly attributes a decision-making role to the CNO: "To ensure consistency of application, the [CNO] and CMC may authorize visible items of religious apparel, within the guidelines of this paragraph." SECNAVINST 1730.8(8)(k). Although that authority may be delegated, paragraph 8(1) goes on to state that: "In any case in which a commanding officer denies a request to wear an item of religious apparel with the uniform, the member shall be advised of the right to request a review of that refusal by CNO or CMC as appropriate." The court sees no reason why the CNO or the ASN(M & RA), consistent with their responsibility under SECNAVINST 1730.8(11), could not review a denial of a religious accommodation request under SECNAVINST 1730.8(9)(a), or a decision concerning whether administrative action could be taken under SECNAVINST 1730.8(9)(b), in a manner similar to a denial of "a request to wear an item of religious apparel with the uniform . . . ."

The administrative record also contains an example of the CNO taking an active role in the decision-making process in analogous circumstances.[38] An officer, based upon a religious objection, refused to be assigned to duty where he would be in charge of women serving in combat. The commanding officer ultimately relieved the officer of his duties. The CNO reviewed the commanding officer's decision and determined that he had acted properly. The CNO also concluded that the officer would be "retained on active duty and assigned to a billet consistent with his dem-

onstrated abilities, limitations, and the circumstances of this case."[39] Although the CNO explained that each situation must be examined on its own merits, the CNO noted that he took into account the officer's exemplary service record when deciding against separation.

The importance of the CNO's decision in the administrative record is two-fold. First, it demonstrates that the CNO reviewed a commanding officer's decision with respect to an officer's religious objection. The CNO not only reviewed the decision, but made a recommendation to the Secretary of the Navy concerning the manner in which the case should be addressed. Stated another way, this document establishes that individuals above the commanding officer were involved in the decision-making process. Second, the CNO's decision demonstrates that separation was not automatic and that reassignment or reclassification were indeed viable options. Although the court recognizes that the CNO emphasized a case-by-case approach, the court merely notes that the CNO's reasoning reveals that plaintiff's military record would have been factored into the decision.[40]

In sum, in light of the CNO's decision in the administrative record, Rear Admiral Marsh's testimony with respect to appeals, and SECNAVINST 1730.8(8) and (11), the court holds that plaintiff could have appealed the denial of his religious accommodation request to a higher authority within the Navy. Therefore, because plaintiff has not been afforded said review, the court concludes that the Navy has not "[shown] that it would have taken the same action after following proper procedures." *Carmichael,* 298 F.3d at 1376. Plainly stated, the Navy failed to proffer substantial evidence that its error was harmless. See *Christensen,* 60 Fed.Cl. at 29 (quoting *Sanders,* 219 Ct.Cl. at 310, 594 F.2d 804). Accordingly, the court resolves the Federal Circuit's final question against

38. AR at 241–42; Tr. at 21–22, 25–26.

39. AR at 241.

40. *Carmichael v. United States,* No. 99–958C, slip op. at 2 (Fed.Cl. Oct.7, 2003) ("Over the course

of . . . sixteen years, plaintiff provided exemplary service to the Navy, achieving the rank of Chief Petty Officer, and in the process, earning several medals and commendations.").

defendant and plaintiff prevails on his motion for summary judgment.

Prior to concluding, the court addresses plaintiff's prayer for relief. The court notes that plaintiff enlisted in the Navy's delayed entry program on June 27, 1980, and entered active duty on July 11, 1980.[41] Plaintiff received all the pay he was due up until March 17, 1997. The court previously found, however, that plaintiff possessed a "firm" right to an extension of enlistment until January 17, 1999.[42] Plaintiff is, therefore, not only entitled to back pay during the time period between March 17, 1997, and January 17, 1999, but also to benefits which would have accrued therein. *Martinez v. United States,* 333 F.3d 1295, 1303 (Fed.Cir.2003) (en banc) (holding that "the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge"); see *Metz v. United States,* 65 Fed.Cl. 631, 638, 2005 WL 1308539, at *8 (2005) (awarding the plaintiff retirement pay); *Casey v. United States,* 8 Cl.Ct. 234, 243 (1985) (holding that the plaintiff was entitled to "all back pay, allowances, and benefits …"). As a result of this conclusion, plaintiff also would have been able to invoke the protection of 10 U.S.C. § 1176(a), which provides that:

> A regular enlisted member who is selected to be involuntarily separated, or whose term of enlistment expires and who is denied reenlistment, and who on the date on which the member is to be discharged is within two years of qualifying for retirement under section 3914 or 8914 of this

title, or of qualifying for transfer to the Fleet Reserve or Fleet Marine Corps Reserve under section 6330 of this title, shall be retained on active duty until the member is qualified for retirement or transfer to the Fleet Reserve or Fleet Marine Corps Reserve, as the case may be, unless the member is sooner retired or discharged under any other provision of law.

On January 17, 1999, plaintiff would have completed approximately eighteen years and six months of service.[43] If the circumstances described in 10 U.S.C. § 1176(a) arose, plaintiff nevertheless would have been "retained on active duty until [he was] qualified for retirement or transfer[red] to the Fleet Reserve or Fleet Marine Corps Reserve …." 10 U.S.C. § 1176(a).[44] As previously stated, plaintiff provided exemplary service to the Navy over the span of sixteen years. Because plaintiff was on track to complete twenty years of service on July 31, 2000,[45] his recovery necessarily encompasses back pay as well as benefits, including retirement benefits, which would have vested at any point prior to or on said date.[46] These factors and conclusions, at a minimum, must be taken into account by the parties when calculating damages.

### Conclusion

For the above-stated reasons, plaintiff's Cross–Motion For Summary Judgment On The Second And Third Counts Of The Complaint is hereby GRANTED. Accordingly, defendant's Motion For Summary Judgment is hereby DENIED.[47]

---

**41.** Plaintiff's Response To Defendant's Proposed Findings Of Uncontroverted Fact ¶¶ 1–2.

**42.** *Carmichael v. United States,* No. 99–958C, slip op. at 13 (Fed.Cl. Oct.7, 2003).

**43.** Tr. at 48. Plaintiff's counsel indicated at oral argument, in response to questioning from the court, that plaintiff would have achieved eighteen years of service on July 10, 1998. *Id.*

**44.** Cf. 10 U.S.C. § 12686 (establishing a sanctuary provision which provides that "a member of a reserve component who is on active duty … and is within two years of becoming eligible for retired pay or retainer pay … may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is

approved by the Secretary"); see also *Bond v. United States,* 47 Fed.Cl. 641, 665 (2000) (holding that a member who had qualified under a sanctuary provision was improperly released); *Bates v. United States,* 34 Fed.Cl. 51, 54 (1995) (awarding pay and retirement benefits to a member who was improperly released in contravention of a sanctuary provision).

**45.** See 10 U.S.C. § 6330(b) ("An enlisted member of the Regular Navy or the Naval Reserve who has completed 20 or more years of active service in the armed forces may, at his request, be transferred to the Fleet Reserve.").

**46.** Complaint at 19.

**47.** Any outstanding motions are hereby MOOT.

The parties shall determine the appropriate amount of damages, including back pay and retirement benefits due plaintiff, by August 23, 2005, and shall file said stipulation with the court by that date. The Clerk of the Court is directed to enter judgment, at that time, for said amount without further order of the court. No costs.

IT IS SO ORDERED.